TAYLOR, Judge.
David Thomas McDaniel was convicted of driving under the influence of alcohol. He was fined $500 and sentenced to 60 days’ imprisonment. Sentence was suspended and he was placed on two years' probation.
On February 1, 1986, Alabama State Trooper E.W. King clocked appellant’s car, by radar travelling 68 m.p.h. in a 55 m.p.h. zone. Officer King pulled the appellant over, got out of his patrol car, and approached the appellant’s car. Officer King asked to see the appellant’s license, informed him that he had been stopped for speeding, and asked him to step back to the patrol car. Officer King testified as follows:
“A: When he got out of the car, I noticed that his clothes were hanging off him. On the way back to the car—
“[DEFENSE COUNSEL]: Objection to hanging off him.
“THE COURT: Overruled.
“THE WITNESS: On the way back to my car, at one point, he grabbed the back of his car with his hand to support him. The subject was staggering. He came on back to my car and had a seat on the other side.
“Q: (Continuing) How far was it that the Defendant had to walk from his car to yours?
“A: Approximately ten feet.
“Q: And did you observe him during the entire time that he was making that move from his car to yours?
*643 “A: Yes.
“Q: And how would you describe his walk?
“A: He was wobbling.
“Q: Did you smell any particular odor that you could identify?
“A: I smelled odor to be what I believed to be of an alcoholic beverage on his breath.
“Q: Okay. Did you identify where that came from?
“A: Yes, I did.
“Q: Where was that?
“A: Prom his breath in talking with him.
“Q: How strong was this odor?
“A: It was very strong.
“Q: What did you do after he reached your car?
“A: After he reached the car and had a seat, I said, or rather I told him why I stopped him, and that was for speeding and I showed him the radar and read him his Miranda rights after I told him I was going to write him a ticket for speeding. That he was under arrest for that. I then asked the subject how much he had been drinking and where he was going and he started telling me that he was going to Camden to go to a party. He was taking the other two subjects in the car down there. I told him that I was going to take him back up to Dallas County, back up to the office over there to give him a test on the PEI, which was after I gave him an alco-sensor test I had in the car and he failed that one.” (emphasis supplied)
The appellant was then transported to the Camden police station, where he was given a breath test on an Intoxilizer 5000. The appellant’s blood alcohol level was .154 percent. He was then arrested for D.U.I.
At trial, McDaniel’s attorney objected to the admission of the results of the breath test. He also moved for acquittal upon grounds that the test results were unlawfully obtained and inadmissible. Both the objection and the motion were overruled.
Although McDaniel raises four issues for review, we find it necessary to consider only one issue, because that issue requires that this case be reversed and remanded.
Appellant contends that the trial court erred in receiving the results of the breath test and further erred in denying his motion for verdict of acquittal. He argues that the breath test and its results were products of an illegal arrest/detention and therefore, were inadmissible.
Speeding is a misdemeanor traffic violation. Section 32-l-4(a), Code of Alabama 1975, states in pertinent part:
“(a) Whenever any person is arrested for a violation of any provisions of this title punishable as a misdemeanor, the arresting officer shall, unless otherwise provided in this section, take the name and address of such person and the license number of his motor vehicle and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice, and such person shall, if he so desire, have a right to an immediate hearing or a hearing within 24 hours at a convenient hour and such hearing to be before a magistrate within the county or city where such offense was committed. Such officer shall thereupon and upon the giving by such person of a sufficient written bond, approved by the arresting officer, to appear at such time and place, forthwith release him from custody.
“Any person refusing to give such bond to appear shall be taken immediately by the arresting officer before the nearest or most accessible magistrate.
“Any person who willfully violates his written bond to appear, given in accordance with this section, shall be guilty of a misdemeanor regardless of the disposition of the charge upon which he was originally arrested.”
Section 32-l-4(b) authorizes a custodial arrest for a misdemeanor traffic violation only in the following circumstances:
(a) “[A]ny person arrested and charged with an offense causing or contributing to an accident resulting in injury or death to any person”;
*644 (b) “[A]ny person charged with driving while under the influence of intoxicating liquor or of narcotic or other drugs”;
(c) “[A]ny person whom the arresting officer shall have good cause to believe has committed any felony.” (emphasis added)
In Hays v. City of Jacksonville, 518 So.2d 892 (Ala.Cr.App.1987), this court stated:
“The clear language of § 32-l-4(b) requires that, in order to fall within the custodial arrest exception to § 32-l-4(a), a motorist must be charged with DUI. Thus, unless one of the other exceptions (an accident resulting in personal injury or death or probable cause to believe the motorist has committed a felony) applies, probable cause to arrest for DUI, accompanied by an arrest for another misdemeanor traffic offense, is not sufficient to authorize custodial detention for chemical testing. Probable cause to arrest for DUI must be followed by an actual arrest, Ex parte Love, [Ms. 86-128, June 5, 1987] 513 So.2d 24 (Ala.1987), and that arrest must be ‘lawful’ within the meaning of § 32-1-4.”
See also, Sheffield v. State, 522 So.2d 4 (Ala.Cr.App.1987).
From the record, it appears that appellant was arrested only for speeding. The circumstances of the arrest did not meet any of the statutory requirements necessary to justify a custodial arrest. Therefore, the arrest was illegal.
The results of the breath tests were the direct result of the illegal arrest. Therefore, the test results were tainted and should not have been admitted into evidence. This is supported by § 32-5-192(a), Code of Alabama 1975, which states:
“Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor.”
See also, State v. Calhoun, 502 So.2d 808 (Ala.1986).
Consequently, our decision on this issue alone pretermits consideration of all other issues, and this case is due to be reversed and remanded.
REVERSED AND REMANDED.
All the Judges concur.