Robert E. Brooks appeals from a summary judgment in favor of the City of Birmingham and its police chief, Arthur Deutcsh (hereinafter collectively referred to as the "City"). We affirm.
The evidence presented to the trial court was as follows: On January 20, 1987, around 11:15 p.m., Brooks was discovered by two Birmingham police officers "slumped over the steering wheel" of his Jeep CJ7 motor vehicle at the intersection of 10th Avenue North and 34th Street North. The officers, Scott Morro and Steve Cain, noticed Brooks's vehicle after a traffic light changed from red to green and Brooks's Jeep did not move. The officers exited their vehicle and approached the Jeep; they discovered Brooks in a slumped position with the engine of the Jeep running. The officers awakened Brooks and asked him to step out of the vehicle. He was incoherent and appeared to be intoxicated; he had trouble standing and had to be assisted by the officers to the patrol car. The officers "detected what they thought was the odor of alcohol" about Brooks. The officers searched the Jeep, but found no alcoholic beverages in it. They attempted to issue Brooks a field "alcolizer test," but he was unable even to participate. When the officers asked Brooks for his driver's license, he began mumbling and handed the officers several dollars in cash. After several attempts, Brooks finally managed to retrieve his driver's license from his wallet. The officers then arrested Brooks for driving under the influence and transported him to the city jail.
After arriving at the city jail, Brooks was able to relay to the officers that he was a diabetic and was experiencing a reaction to low blood sugar. He requested medical attention, as well as a piece of candy or a soft drink so that he could raise his blood sugar level, but he was told that nothing could be done until the Intoxilizer 5000 test was administered and the arrest process was completed.
The Intoxilizer 5000 test showed Brooks's blood alcohol content to be 0.0%. Nonetheless, Brooks was fingerprinted, photographed, and taken to a "holding tank." Brooks claims that when he inquired as to why he was being held when he clearly was not intoxicated, he was told by the jail administrator, "I can hold you for four hours, and that's damned well what I'm going to do." Brooks also claims that he repeatedly requested medical attention during the arrest process but that he did not receive any such attention until several minutes after he was placed in a cell. At that point, the duty nurse gave Brooks two Hershey chocolate kisses and made the medical decision that the paramedics need not be notified.
Approximately 30 minutes after Brooks had been "booked in," he was allowed to call his wife to make arrangements for posting bond. The arrangements were made, and Brooks was released after being held for approximately three hours.[1]
On August 7, 1987, Brooks filed a complaint against the City of Birmingham; the Birmingham Police Department and its chief, Arthur Deutcsh; and various fictitiously named parties. Count one of the complaint claimed damages under 42 U.S.C. § 1983 and alleged unlawful arrest, false imprisonment, malicious prosecution, and negligence. Count two adopted all allegations in count one, but made those allegations against fictitiously named parties, and also added a claim based on the City's alleged failure to provide medical care. Count three adopted all allegations in counts one and two and added a claim alleging negligent training, hiring, and instruction against various agents of the city. On March 13, 1989, Brooks amended his complaint to specifically allege a claim of negligence *Page 453 
by the defendants in not recognizing his medical needs.
In his deposition, Brooks claims that on the day of the incident he had attended an accounting seminar at the Riverchase Galleria near Birmingham, and that it had continued until late evening. He said that when he left the seminar, he began driving toward the downtown Birmingham area to his office. During the trip, he said, he began to feel the effects of low blood sugar and immediately began searching for a soft drink vending machine so that he could raise his blood sugar level with a sweet soft drink. He said that as he continued the search, he became weak and disoriented and eventually reached a point of disability while stopped at a traffic light. At that point, he said, the officers discovered him in his impaired condition.
Although Brooks admits in his deposition that his memory of the incident is incomplete, he claims that he told the officers at the scene that he was a diabetic and that he asked them to call paramedics. He also claims he asked the officers if they had a sweet soft drink or a candy bar that he could have for his condition. He claims that the officers said they had nothing in their vehicle that could help him and that they would have to transport him to the city jail before any paramedics could be called.
According to the depositions of the arresting officers, Brooks was unable to communicate at the time of his arrest and they first learned of Brooks's claim that he was diabetic long after they had arrived at the city jail.
On March 23, 1989, the trial court entered a partial summary judgment against Brooks on the claims of false arrest, false imprisonment, and malicious prosecution. On May 23, 1990, the trial court entered a final summary judgment in favor of the defendants on the remaining issues. Brooks appeals.
 I
Initially, we point out that a summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P. Once the moving party has made a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to provide "substantial evidence" in support of his position. Ala. Code 1975, § 12-21-12; Rule 56, A.R.Civ.P.; Hanners v. BalfourGuthrie, Inc., 564 So.2d 412 (Ala. 1990); Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794 (Ala. 1989). The trial court is required to view all of the evidence offered by the moving party in support of its motion in the light most favorable to the nonmovant. Hanners, supra, and Bass, supra. With this standard in mind, we now address the merits of Brooks's contentions.
Brooks first challenges the summary judgment as to the claims of false arrest, false imprisonment, and malicious prosecution.
The liability of a municipality for the negligence of its agents, officers, or employees is governed by Ala. Code 1975, § 11-47-190. That section provides, in part:
 "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty. . . ."
In Boyette v. City of Mobile, 442 So.2d 61 (Ala. 1983), we held that, pursuant to § 11-47-190, a municipality has immunity from actions alleging unlawful arrest and false imprisonment based on negligence on the part of city employees while acting within the scope of their employment. Id. Thus, an individual may not maintain an action for unlawful arrest and false imprisonment against a municipality based upon the alleged negligence of city employees acting within the scope of their employment. Id.
We have also held that a municipality cannot be held liable under § 11-47-190 *Page 454 
for malicious prosecution because of the conduct of its police officers or employees or members of its legal department in a wrongful arrest and prosecution undertaken in their official capacity, because a corporate entity, a municipality, cannot entertain a malicious intent. Neighbors v. City of Birmingham,384 So.2d 113 (Ala. 1980). See, also, Gore v. City of Hoover,559 So.2d 163 (Ala. 1990); Boyette v. City of Mobile, supra;Bahakel v. City of Birmingham, 427 So.2d 143 (Ala. 1983); andMcCarter v. City of Florence, 216 Ala. 72, 112 So. 335 (1927). Section 11-47-190 provides for an action against a municipality for the "neglect, carelessness or unskillfulness" of its agents, not for their intentional torts. Gore v. City ofHoover, supra. Thus, based on this rationale, the summary judgment on the false imprisonment and malicious prosecution claims was proper.
As to the false arrest claim, we acknowledge that the above-stated rationale does not strictly apply to an action for false arrest that is premised upon a negligence claim.Id. However, under the facts of the instant case, an action does not lie for false arrest, for the following reasons:
The officers found Brooks in his vehicle, slumped over the steering wheel, stopped at a traffic light. Brooks could not speak clearly and was unable to walk. He clearly appeared to be impaired and presented a danger to other motorists. The officers' suspicions about Brooks were further compounded when they detected what they thought was the odor of alcohol. These circumstances clearly presented the officers with probable cause to arrest Brooks for DUI. Richardson v. City ofTrussville, 492 So.2d 625 (Ala.Cr.App. 1985); see, also,McDaniel v. State, 526 So.2d 642, 644 (Ala.Cr.App. 1988). Therefore, Brooks was lawfully arrested and detained, and we find no evidence of "neglect, carelessness or unskillfulness" on the part of the arresting officers. Thus, the trial court's summary judgment against Brooks's false arrest claim was correct.
 II
Brooks also asserts that he is entitled to damages under42 U.S.C. § 1983 because of the City's alleged failure to properly train the police force to recognize medical emergency situations. Because Brooks relies on the case of City ofCanton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L. violation of his rights under the Due Process Clause of the Fourteenth Amendment, premised on his failure to receive medical attention while in police custody.
In City of Canton, Ohio v. Harris, the Court stated that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. at 388, 109 S.Ct. at 1204. Under the facts before us, we do not consider the conduct of the arresting officers or that of the city jail personnel to show a "deliberate indifference" to Brooks's rights. The record clearly shows that Brooks received medical attention soon after the arrest process was completed. The record also shows that even before Brooks received medical attention, his condition had drastically improved from what it was at the time of his arrest. More importantly, the jail nurse, after examining Brooks, gave him two small pieces of candy and made the medical decision that nothing more was needed in regard to his condition. It also appears from the record that by the time bond was posted and Brooks was released, his condition had improved enough that he was able to function normally. Brooks stated in his deposition that after he was released he did not seek further medical attention until the following day. Brooks also stated that his office visit to his physician the following day was not related to his arrest.
Based on the facts before us, Brooks has failed to provide sufficient proof to satisfy the standard of § 1983 liability set forth in City of Canton, Ohio v. Harris, supra. He has also *Page 455 
failed to present substantial evidence that the arresting officers and jail personnel showed a "deliberate indifference" to his medical needs. He has also failed to specify the City's "deficiency in training" and has failed to offer proof that the "deficiency in training" actually caused the police officers' alleged indifference to his medical needs. The record contains no evidence to support Brooks's claim of a Due Process Clause violation. Thus, the trial court did not err in entering the summary judgment for the defendants.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.
[1] The record is unclear as to why Brooks was held for three hours. There is some indication that Brooks's wife experienced a delay in arranging bond; however, neither Brooks nor any of the defendants in this case offered any evidence to clearly explain the delay.