Anecia Kay **HURST**, Plaintiff,

v.

Roosevelt **FINLEY**; The City or Municipality of Camp Hill, Alabama, Defendants.

Civ. A. No. 93–D–248–E.

United States District Court, M.D. Alabama, Eastern Division.

June 14, 1994.

Michael D. Cook, Valley, AL, Billie Ann Tucker, Lafayette, AL, for plaintiff.

Alex L. Holtsford, Jr., T. Randall Lyons, H.E. Nix, Jr., Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

This matter is now before the court on the defendants' motion for summary judgment, filed on April 11, 1994, and briefs in support thereof, filed on April 11, 1994 and April 13, 1994, respectively. The plaintiff filed a brief in opposition on April 29, 1994.

### JURISDICTION

This court has subject matter jurisdiction under 28 U.S.C.A. § 1331. Personal jurisdiction and venue are uncontested.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete fail-

ure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## FACTS

At approximately 1:35 A.M. on February 2, 1991, Anecia Kay Hurst, along with three other companions, was traveling along a highway in the City of Camp Hill, Alabama. Defendant Roosevelt Finley, Chief of Police for the City of Camp Hill, allegedly observed Hurst run a stop sign. Chief Finley stopped Hurst to issue her a summons for the traffic violation.

When Chief Finley approached the vehicle, he smelled the odor of alcohol. Finley asked Hurst if she had been drinking, and she confirmed that she had, but that she was not "drunk." According to Hurst, the three other passengers were drunk, but she had only had "about three swallows of her husband's beer." (Pl.'s B. in Opp. to M.Summ.J. at 4.) Hurst claims that the aroma of alcohol could be smelled outside the vehicle because her cousin, the owner of the vehicle and fellow passenger, had spilled a beer inside the car and because the heater in the car had intensified the smell.

Without administering any field sobriety tests, Finley placed Hurst under arrest for driving under the influence of alcohol and issued a summons for running the stop sign and for driving under the influence of alcohol. Hurst contends that Finley arrested her primarily because of the intense smell of alcohol emanating from the automobile. Finley handcuffed Hurst and placed her in the back seat of his police car.[1] While in transit to the Chambers County Jail, where detainees of the City of Camp Hill were housed, Finley made another traffic stop and arrested a male driver for driving under the influence of alcohol. Although Hurst remained handcuffed in the back seat, Finley placed the drunken male in the back seat as well. Hurst does not claim that she was mistreated by the other arrestee, only that she was frightened by being alone with a drunken male while handcuffed.

Upon arrival at the jail, Hurst was administered an Intoxilyzer 5000 test, in the presence of Finley, and the alcohol level in her blood system registered at 0.012, substantially below the legal standard of driving under the influence, which is 0.10. Although her blood level of alcohol did not indicate that she had legally driven under the influence, Hurst was required to post bond before being allowed to leave the jail. Hurst was unable to arrange for bond until the next morning when her husband came to assist in her release.

Hurst pleaded guilty to running the stop sign and paid a fine in the amount of $44.00. The charge for driving under the influence of alcohol was nolle prossed on motion of the City of Camp Hill.

Hurst charges that defendants, Roosevelt Finley, in both his individual and official capacities, and the City of Camp Hill, violated her constitutional rights under color of state law in violation of 42 U.S.C. § 1983. Hurst alleges that the defendants "made an unreasonable seizure of the Plaintiff, deprived her of her liberty without due process of law and thereby deprived her of her rights, privileges and immunities as guaranteed by the fourth, fifth and fourteenth amendments of the Constitution of the United States." (Pl.'s Br. in Opp. to M. for Summ.J. at 2.) Hurst alleges that the defendants continued to deprive her of her liberty without due process and without probable cause by detaining her and

---

1. Unexplainably, Finley allowed Vicki Moncus, who Hurst testified was drunk, to drive the car after Hurst was arrested. (Hurst dep. at 26.) In her deposition, Hurst also testified that Finley told Moncus "that she could drive, but she was on her own, and so she got in the car, and left." *Id.* at 27.

requiring her to post bond after her arrest. Furthermore, Hurst also charges the defendants with violations of state law, including false imprisonment and malicious prosecution. Lastly, Hurst claims that the City of Camp Hill "failed to adequately train it police officers in order to guard against the unlawful arrest of persons ... without just or lawful cause." (*Id.* at 3.)

## DISCUSSION

### I. *Defendant Roosevelt Finley*

#### a. *Official Capacity*

In general, an action against an official in his official capacity imposes liability on the entity that official represents, provided the entity received notice and had an opportunity to be heard. *Brandon v. Holt,* 469 U.S. 464, 471–472, 105 S.Ct. 873, 877–878, 83 L.Ed.2d 878 (1985); *see Free v. Granger,* 887 F.2d 1552, 1557 (11th Cir.1989). Therefore, a "plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). In this case, the claims against defendant Finley in his official capacity are essentially claims against the City of Camp Hill, Alabama.

Furthermore, in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court of the United States held that municipalities may not be held liable under a theory of respondeat superior for the torts committed by their agents. In this case, Finley, Chief of Police of the City of Camp Hill, was acting as the City's agent. Because Hurst seeks to recover damages from the City based on Finley's behavior in his official capacity during her arrest, Hurst essentially seeks to recover from the City for the acts of its agent under respondeat superior. Clearly, such causes of action are not allowable under the holding of *Monell.* Therefore, defendant Roosevelt Finley's motion for summary judgment for acts allegedly committed in his official capacity is due to be granted.

#### b. *Individual Capacity*

The doctrine of qualified immunity insulates government officials from personal liability or liability in their individual capacities for money damages for actions taken pursuant to their discretionary authority. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court established the following test to determine if government officials were entitled to qualified immunity:

> [G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The test of whether a defendant is entitled to qualified immunity in his individual capacity is one of objective reasonableness. *Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir. 1991). In other words, the question in determining if an individual defendant is entitled to qualified immunity is whether the defendant could have believed his conduct was lawful in light of clearly established law and considering the information possessed by the official at the time of the conduct. *See Hardin v. Hayes,* 957 F.2d 845, 848 (11th Cir. 1992).

In conducting the objective legal reasonableness inquiry, the Court of Appeals for the Eleventh Circuit has carved out the following analytical framework:

> [T]his court established a two-step analysis to be used in applying the *Harlow* test: the defendant government official must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred," and then the burden shifts to the plaintiff to demonstrate that the defendant "violated clearly established constitutional law."

*Swint v. City of Wadley,* 5 F.3d 1435 (11th Cir.1993) (quoting *Sammons v. Taylor,* 967 F.2d 1533, 1539 (11th Cir.1992)).

Chief Finley, while acting in his capacity as police chief, arrested Hurst for driving under the influence of alcohol. It is

undisputed that at that time Finley was acting within the scope of his discretionary authority as Chief of Police of the City of Camp Hill.

Consequently, the burden shifts to Hurst to demonstrate that Finley violated a clearly established constitutional right protective of Hurst. Hurst claims that Finley violated her constitutional rights by arresting her and detaining her without probable cause.

"The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Probable cause is present where " 'the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.' " *Beck*, 379 U.S. at 91, 85 S.Ct. at 225. The question of whether a law enforcement officer has probable cause to arrest a suspect is a matter of law for the court, not the trier of fact. *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

At approximately 1:35 A.M. on February 2, 1991, Finley allegedly observed Hurst run a stop sign while driving through the City of Camp Hill. Although Hurst claims that she did not run the stop sign, she pleaded guilty to the traffic violation and paid the fine awarded thereon. After stopping Hurst, Finley smelled alcohol emanating from the automobile. Finley asked Hurst if she had been drinking to which she replied in the affirmative, but said that she was not "drunk." Hurst admits that the other three passengers in the vehicle, including her husband, were intoxicated. Finely placed Hurst under arrest, handcuffed her, and placed her in the back of his police car. Finley did not administer any field sobriety tests to Hurst before arresting her.

The court finds that an officer, in Finley's situation, could not reasonably have concluded that Hurst was driving under the influence of alcohol. Probable cause is present when "[a]n apparent state of facts found to exist upon reasonable inquiry, (that is, such inquiry as the given case renders *convenient* and *proper*,) which would induce a reasonably intelligent and prudent man to believe, in a criminal case, that the accused person had committed the crime charged ..." *Black's Law Dictionary* 1201 (6th ed. 1990). In charging an accused with the serious offense of driving under the influence of alcohol, the court believes that it would be entirely convenient and proper to administer one or more field sobriety tests. The general field sobriety tests well known to any court and any police officer, such as touching one's finger to his or her nose, walking in a straight line while placing one foot in front of another, reciting the alphabet, or counting forward and backward are simple, unobtrusive, and efficient. It does not appear to the court that administering one or all of the enumerated tests would have taken more than a few minutes at the most. Without doing so, the court finds that a reasonable officer would not have had sufficient information to believe that Hurst had committed the crime of driving under the influence of alcohol. This is especially true since Hurst admitted to having drunk about "three swallows" of her husband's beer and her explanation of the reason for the smell of alcohol being a spilled beer and the heater being on in the car.

Furthermore, the court notes that the very concept of designating a sober driver, which law enforcement and public policy encourage, is based on the principle that one person will refrain from drinking to excess, *or at all*, so that the designated driver may safely drive his or her cohorts who do choose to drink. Therefore, it is inappropriate to the court to arrest a driver simply because there is a strong alcoholic smell emanating from a vehicle and because the passengers in the vehicle are drunk. After having observed Hurst's car run a stop sign, Finley clearly had probable cause to stop Hurst's car. Upon smelling alcohol and upon Hurst's admission that she had been drinking, some indicia of probable cause for driving under the influence of alcohol were present. However, without testing Hurst's motor skills in some way to determine if they were impaired by the effect of alcohol, the court finds that Finley did not

have enough information to reasonably conclude that Hurst had been driving under the influence of alcohol. Therefore, the court finds that Finley did not have probable cause to arrest Hurst for driving under the influence of alcohol. This conclusion is strongly reinforced when Hurst scored 0.012 on the Intoxilyzer at the Chambers County Jail and was *still* kept under arrest and forced to spend the night in jail and to make bond the next day.[2]

Because Finley did not have probable cause to arrest plaintiff Hurst, the court finds that as a reasonable law enforcement officer, he could not reasonably have believed his conduct was lawful in light of clearly established law and considering the information he possessed at the time of the arrest. *See Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir.1992) (holding that an officer is entitled to qualified immunity insofar as conduct does not violate clearly established rights of which a reasonable officer would have known); *see also Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (holding that Secret Service agents were entitled to qualified immunity where they were reasonably mistaken that probable cause was present).[3] The court finds that a reasonable officer in Finley's situation would have believed that he was violating Hurst's clearly established constitutional rights. Therefore, the court finds that defendant Roosevelt Finley is not entitled to qualified immunity for the § 1983 claims against him in his individual capacity.

## II. Defendant City of Camp Hill:

### a. Municipal Policy and Custom

In certain situations, a law enforcement agency's failure to train its officers may constitute a "policy" upon which governmental liability may rest. *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Such liability may be imposed for a single decision by policymakers under certain conditions. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). Liability may be imposed for the existence of an improper or inadequate policy or from the absence of a policy. Plaintiff Hurst charges that the City of Camp Hill, Alabama is liable for failing to formulate a written policy concerning arrests, specifically those arrests requiring that field sobriety tests be performed before a suspect is charged with driving under the influence of alcohol.

In *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court of the United States held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388, 109 S.Ct. at 1204. The Court further held that the municipality may

**2.** The court realizes that driving under the influence can be caused by agents other than alcohol, for example, narcotics—but with no field sobriety test administered and no blood test offered pursuant to *Code of Alabama* § 32–5A–194(a)(3) (1989), at Hurst's own expense and with the City of Camp Hill law enforcement officials making the arrangements therefor, there was no way of telling whether the cause of the alleged influence was some agent other than alcohol.

**3.** The facts in *Hunter* are clearly distinguishable from the facts in the present case. In *Hunter*, James Bryant delivered two copies of a letter exposing a plot to kill President Ronald Reagan to two administrative offices on the campus of the University of Southern California. A campus police sergeant advised the Secret Service of the threat, and Secret Service Agent Brian Hunter began an investigation. After interviewing several university employees who identified Bryant and confirmed the fact that Bryant had made

verbal threats of the President in their presence, Hunter and another agent went to Bryant's house and questioned him. While at Bryant's residence, Bryant would not discuss his views of the President or any possible assassination attempt, but he did give the agents permission to search his home. During the search, Agent Hunter found the original of the threatening letter that had been delivered to the campus offices. In the case at issue, Chief Finley could easily have assuaged his concern for the safety of other motorists by administering a field sobriety test to determine if Hurst was driving under the influence of alcohol. The agents in *Hunter* had a much more difficult job of measuring an intangible, the seriousness of a threat on the life of the President of the United States. The court finds that persuasive facts, similar to those in *Hunter*, which would support a finding that Finley could reasonably have believed that he had probable cause to arrest Hurst are not present in this case.

only be held liable where the policies were the "moving force [behind] the constitutional violation." *Id.* at 389, 109 S.Ct. at 1205 (citing *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981)). Moreover, for liability for inadequate training to attach the "identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 391, 109 S.Ct. at 1206.

To survive a motion for summary judgment, the plaintiff must provide sufficient facts from which a jury could find that the City of Camp Hill's failure to train officers on how to conduct themselves when making arrests resulted in deliberate indifference to the plaintiff. The City of Camp Hill, at the time of Hurst's arrest, had no policy regarding the way persons suspected of being under the influence of alcohol while driving should be treated or tested before being arrested. There was no requirement or policy that field sobriety tests be administered before arresting persons and charging them with driving under the influence of alcohol.

Driving under the influence of alcohol is a serious crime. Possible penalties in the State of Alabama for the first offense of driving under the alcohol includes a fine of not less than $250 and not more than $1,000, imprisonment for a period not to exceed one year, or both. *Ala.Code* § 32–5A–191(c) (1989). For the second offense occurring within a five year period following the first offense, punishment includes a fine of not less than $500 and not more than $2,500 *and* imprisonment of not more than a year. *Id.* § 32–5A–191(d). Punishment for the first offense also includes a mandatory suspension of the driver's license for 90 days, and conviction of the second offense results in suspension of the driver's license for one year. *Id.* § 32–5A–191(c) & (d). Upon consideration of the seriousness of the charge, driving under the influence of alcohol rightly deserves all the attendants of due process of law.

■ In the present case, the court has found that Finley did not have probable cause to arrest plaintiff Hurst. The court now finds that the City's failure to train its law enforcement personnel in the proper procedures to be followed when arresting an individual suspected of driving under the influence of alcohol was closely related to plaintiff Hurst's alleged injury, which was the deprivation of her Fourth Amendment right to be free of search and seizure without probable cause. Furthermore, the court finds that the City's lack of policy requiring that one or a battery of field sobriety tests be administered before placing a suspected driver under arrest was the motivating force behind the alleged violation of Hurst's Fourth Amendment right to be free from search and seizure in the absence of probable cause.

As a result, the court finds that Hurst has submitted sufficient evidence from which a jury could find that the City of Camp Hill's policy in handling arrestees resulted in deliberate indifference to the constitutional rights of plaintiff Hurst. Therefore, the City of Camp Hill, Alabama is not entitled to summary judgment on the plaintiff's claim for failure to adequately train its police officers.

### b. *State Law Claims*

■ Hurst also charges the City of Camp Hill, Alabama with the state law claims of false imprisonment and malicious prosecution. A municipality may not be held liable for false imprisonment or malicious prosecution. *Brooks v. City of Birmingham,* 584 So.2d 451 (Ala.1991). The court finds to rule otherwise would subject the City of Camp Hill to § 1983 liability under the doctrine of respondeat superior which would contravene the holding of the Supreme Court in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which held that municipalities may not be held liable under a theory of respondeat superior for the torts committed by their agents. Therefore, summary judgment in favor of defendant City of Camp Hill is due to be granted as to both state law claims.

### Conclusion

In sum, it is CONSIDERED and ORDERED that defendant Roosevelt Finley's motion for summary judgment be and the same is hereby GRANTED in his official capacity. In this regard, JUDGMENT is

**1524**

entered in favor of defendant Finley in his official capacity and against plaintiff Hurst.

It is further CONSIDERED and ORDERED that defendant Roosevelt Finley's motion for summary judgment be and the same is hereby DENIED in his individual capacity.

It is further CONSIDERED and ORDERED that defendant City of Camp Hill, Alabama's motion for summary judgment be and the same is hereby DENIED in regard to the failure to adequately train its officers.

It is CONSIDERED and ORDERED that the City of Camp Hill, Alabama's motion for summary judgment be and the same is hereby GRANTED as to the state law claims. In this regard, JUDGMENT is entered in favor of defendant City of Camp Hill, Alabama, and against plaintiff Hurst.