IN THE SUPREME COURT OF MISSISSIPPI
NO. 97-KA-00132-SCT

*VICTOR GREEN a/k/a VICTOR E. GREEN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/21/97 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANTHONY J. BUCKLEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | JEANNENE T. PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 4/16/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/7/98 |

**BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. On July 7, 1995, Victor Green was stopped by Officer Robby McLaurin of the Laurel Police Department for speeding and for improper passing. Officer McLaurin clocked Green going 65 miles per hour in a 30 miles per hour speed zone and observed Green engage in illegal passing. Upon approaching Green's vehicle, McLaurin stated that he could smell the impurities of alcoholic beverage coming out of the vehicle and he noticed that Green had watery bloodshot eyes. Green did not have a valid driver's license but produced a social security card instead. McLaurin further stated that as Green exited the truck, he "had to use the door for support because he was awfully bad intoxicated."

¶2. McLaurin performed the horizontal gaze and nystagmus (HGN) test, which Green failed. Thereafter Green refused to do the other standardized field sobriety tests and McLaurin informed Green that he was under arrest for driving without a license, speeding and improper passing. Green was transported to the Laurel Police Department, where he was informed of his rights "regarding the CMI Intoxilyzer test."[1] After waiting a period of 20 minutes, McLaurin administered the Model 5000 Intoxilyzer test and Green scored .266. McLaurin then advised Green that he had the right to make a telephone call for legal or medical help.

¶3. Because Green had no driver's license, McLaurin was unable to check his record through NCIC. However, McLaurin did find a prior offense on Green's skeleton record as well as a "second offense DUI" charged at the Laurel Police Department. Accordingly, McLaurin charged Green with felony DUI pursuant to Miss. Code Ann. § 63-11-30(1) (Supp. 1995). McLaurin then processed Green, took photographs and fingerprints and placed him in jail. McLaurin then called an investigator to advise that Green had been charged with felony DUI and left the paperwork in the investigator's office so that the investigator could carry on with the case the following morning.

¶4. McLaurin testified that when he initially placed Green in handcuffs, Green was put under arrest for improper passing, no driver's license and a speeding violation. McLaurin further explained that he did not have to advise Green that he was in "investigative custody" for suspected DUI, because he (Green) was already under arrest for the other charges. McLaurin further acknowledged that he did not issue a uniform traffic ticket in this case.

## STATEMENT OF THE CASE

¶5. On October 5, 1995, the Grand Jury of Jones County, Mississippi, indicted Green for the crime of felony DUI third offense, in violation of Miss. Code Ann. § 63-11-30(1) (Supp. 1995). On January 21, 1997, Green was tried without a jury in the Jones County Circuit Court, Honorable Billy Joe Landrum presiding. Judge Landrum found Green guilty of felony DUI and sentenced him to one (1) year in the custody of the Mississippi Department of Corrections, and ordered him to pay a $2,000.00 fine as well as court costs. Green then filed a motion for new trial in the Jones County Circuit Court, which was denied. Aggrieved by the lower court's decision, Green appeals, by and through his attorney, Anthony J. Buckley, and raises the following issues:

**I. WHETHER GREEN'S CONSENT TO THE INTOXILYZER 5000 WAS INVALID SINCE GREEN WAS NEVER PLACED UNDER FORMAL ARREST FOR SUSPECTED DUI.**

**II. THE FELONY DUI OFFENSE WAS NOT PROPERLY BEFORE THE CIRCUIT COURT SINCE THE ARRESTING OFFICER FAILED TO ISSUE A UNIFORM STANDARD TICKET FOR SUCH.**

**III. WHETHER OFFICER MCLAURIN'S FAILURE TO ADVISE GREEN OF HIS RIGHT TO OBTAIN AN INDEPENDENT CHEMICAL TEST RENDERED THE INTOXILYZER RESULT INADMISSIBLE.**

## LEGAL ANALYSIS

### I. WHETHER GREEN'S CONSENT TO THE INTOXILYZER 5000 WAS INVALID SINCE GREEN WAS NEVER PLACED UNDER FORMAL ARREST FOR SUSPECTED DUI.

¶6. Green maintains that "in order to be subjected to the continuing custody necessary for a breath test, [the defendant] must actually have been charged with suspected D.U.I." Green further asserts that the results of the breath test should be suppressed because the officer failed to arrest Green for suspected DUI prior to administering the field sobriety tests and before offering the Intoxilyzer 5000 test. In support of his argument, Green cites an Alabama Court of Criminal Appeals case, ***McDaniel***

*v. State*, 526 So. 2d 642 (Ala. Crim. App. 1988), a Colorado Supreme Court case, ***People v. Carlson***, 677 P.2d 310 (Colo. 1984), and Miss. Code Ann. § 63-11-5(1). The Mississippi statute upon which Green relies states in pertinent part:

> Any person who operates a motor vehicle upon the public highways, public roads and streets of this state shall be deemed to have given his consent, subject to the provisions of this chapter, to a chemical test or tests of his breath for the purpose of determining alcohol concentration. . . . The test or tests shall be administered at the direction of any highway patrol officer . . . **when such officer has reasonable grounds and probable cause to believe** that the person was driving or had under his actual physical control a motor vehicle upon the public streets or highways of this state while under the influence of intoxicating liquor or any other substance which had impaired such person's ability to operate a motor vehicle. . . .

Miss. Code Ann. § 63-11-5(1) (1996)[(2)] (emphasis added).

¶7. Mississippi's statute requires the officer to have "reasonable grounds and probable cause" before administering a test to determine blood alcohol concentration. There is no authority in support of Green's contention that the officer must **arrest** the individual before administering the breath test. Conversely, this Court's decision in ***Ashley v. State***, 423 So. 2d 1311 (Miss. 1982), is dispositive of the case at bar. In ***Ashley***, this Court stated

> [the defendant] had not been lawfully arrested when his blood was withdrawn for testing. However, our examination of the facts must not stop here. We must determine whether Officer Santacruz had **probable cause to detain** [the defendant] and order a blood test after he went to the hospital.

*Id.* at 1313 (emphasis added).

¶8. Furthermore, in ***[Sheppard v. Mississippi State Highway Patrol](#)***, 693 So. 2d 1326 (Miss. 1997), the defendant argued that the officer did not follow proper procedure when he arrested the defendant **prior** to requesting that he submit to a breath test. *[Id.](#)* at 1329. The defendant in ***Sheppard*** maintained that this procedure was "in direct contradiction of precedent and statutory requirements." *[Id.](#)* In ***Sheppard***, this Court referred to Miss. Code Ann. § 63-11-5 and stated

> As a practical matter a driver has been stopped and usually brought to the jail, or other testing has occurred, before he is asked to submit to a sobriety test. **Probable cause** to believe that the person is impaired by a substance is required before the test may be requested.

*[Sheppard](#)*, 693 So. 2d at 1329 (emphasis added).

¶9. The circumstances regarding the arrest in the case at bar are similar to those in this Court's decision in ***Longstreet v. State***, 592 So. 2d 16 (Miss. 1991). As stated in ***Longstreet***,

> Officer Rose did not arrest Longstreet at the hospital. Longstreet was not arrested until the grand jury returned an indictment which was several weeks after the results of the blood test revealed a blood alcohol content of .13. Officer Rose testified that it was common practice to await the blood alcohol test results from the crime lab in Jackson before seeking an indictment in such cases.

*Id.* at 18. Longstreet argued that the blood sample test results should be inadmissible due to the Officer's failure to inform him that he had a right to refuse such. This Court held that the test results were admissible based on the fact that the blood search was legal because it was based upon **probable cause**. *Id.* at 21. Even though the specific issue regarding whether the defendant must be arrested prior to giving consent to the intoxilyzer was not addressed in ***Longstreet***, the case is indicative of the Court's willingness to allow test results into evidence as long as the law enforcement officer had probable cause to request the test. Similarly, in the case at bar, Green was not arrested for felony DUI until after the intoxilyzer results were obtained and the Grand Jury returned the indictment.

¶10. Based on this Court's precedent, it is clear that an argument based on impropriety in the sequence of the testing and the arrest would not render the result inadmissible. Accordingly, as long as there is probable cause to believe that the person is impaired by some substance, the officer has acted in accordance with Mississippi statute, and consequently, the results of the blood alcohol concentration tests are admissible.

¶11. In the case at bar, Officer McLaurin indicated that he smelled alcohol when he approached Green's vehicle, that Green's eyes were watery and bloodshot, that Green had to steady himself by holding onto the door of the truck, and that Green failed the HGN test. Therefore, this Court finds that Officer McLaurin had sufficient information upon which to establish probable cause to believe that Green was impaired. Consequently, the trial court's decision is affirmed.

### II. THE FELONY DUI OFFENSE WAS NOT PROPERLY BEFORE THE CIRCUIT COURT SINCE THE ARRESTING OFFICER FAILED TO ISSUE A UNIFORM STANDARD TICKET FOR SUCH.

¶12. Green points out that under the implied consent law, Miss. Code Ann. § 63-11-5(3), the traffic ticket issued to a person arrested for violation of the implied consent law shall conform to the requirements of the Uniform Ticket Law, Miss. Code Ann. § 63-9-21(3). Because no third offense Uniform Traffic Ticket was issued, Green asserts that he was not properly charged with violating the Implied Consent Law, and therefore, the felony DUI charge was not properly before the Circuit Court.

¶13. Miss. Code Ann. § 63-11-5(3) (1996)[3] states:

> The traffic ticket, citation **or affidavit** issued to a person arrested for a violation of this chapter shall conform to the requirements of Section 63-9-21(3)(b).

(emphasis added).

¶14. Miss. Code Ann. § 63-9-21(3)(b) (1996)[4] states:

> The traffic ticket, citation **or affidavit** which is issued to a person arrested for a violation of the Mississippi Implied Consent Law shall be uniform throughout all jurisdictions in the State of Mississippi. It shall contain a place for the trial judge hearing the case or accepting the guilty plea, as the case may be, to sign, stating that the person arrested either employed an attorney or waived his right to an attorney after having been properly advised of his right to have an

attorney. If the person arrested employed an attorney, the name, address and telephone number of the attorney shall be written on the ticket, citation **or affidavit**.

(emphasis added).

¶15. In the case at bar, Green was prosecuted in Circuit Court, not pursuant to a traffic ticket, but pursuant to an indictment charging him with felony DUI. Officer McLaurin testified that he did not issue a uniform traffic ticket for the felony DUI, but completed the necessary paperwork and left it for the investigator, Dewey Lee, to complete the next morning. Lee testified that a felony DUI is different from a misdemeanor DUI in that the driving history has to be checked for prior DUI offenses and the supporting documentation must be compiled to support the felony charge. The fact that Green did not have a driver's license prohibited Officer McLaurin from being able to run the necessary checks. Instead, McLaurin was only able to run a skeleton record and thus was not able to obtain a complete record as well as the supporting documentation. Therefore, it was necessary for Investigator Lee to continue the case the following morning. Once Lee had the necessary information and compiled the required paperwork, he filed an affidavit in lieu of a uniform traffic ticket. Based upon the affidavit, Green was indicted by the Jones County Grand Jury for Felony DUI pursuant to Miss. Code Ann. § 63-11-30 (Supp. 1995).

¶16. The statute Green relies upon provides for an affidavit containing the required information as well as a ticket. Additionally, the appellant does not argue that the affidavit was not in compliance with the statute. Therefore, we hold that there is no merit to Green's contention that the felony DUI charge was not properly before the Circuit Court.

### III. WHETHER OFFICER MCLAURIN'S FAILURE TO ADVISE GREEN OF HIS RIGHT TO OBTAIN AN INDEPENDENT CHEMICAL TEST RENDERED THE INTOXILYZER RESULT INADMISSIBLE.

¶17. Green argues that since Officer McLaurin did not advise Green of his right to an independent blood test at the defendant's expense, the blood alcohol content reading should be suppressed. The pertinent Mississippi statute states:

> The person tested may, at his own expense, have a physician, registered nurse, clinical laboratory technologist or clinical laboratory technician or any other qualified person of his choosing administer a test, approved by the state crime laboratory . . . , in addition to any other test, for the purpose of determining the amount of alcohol in his blood at the time alleged as shown by chemical analysis of his blood, breath or urine. The failure or inability to obtain an additional test by such arrested person shall not preclude the admissibility in evidence of the test taken at the direction of a law enforcement officer.

Miss. Code Ann. § 63-11-13 (1996).[5]

¶18. In support of his argument Green cites the following cases from other jurisdictions. *State v. McCard*, 326 S.E.2d 856 (Ga. Ct. App. 1985); *Mitchell v. City of N. Little Rock*, 692 S.W.2d 624 (Ark. Ct. App. 1985)[6]; and *People v. Batista*, 491 N.Y.S.2d 966 (N.Y. Crim. Ct. 1985). However, review of these cases reveal that they are distinguishable from the case at bar in that the states' statutes involved in *McCard* and *Mitchell* require the law enforcement official to advise the

defendant of his right to obtain an independent test. *See* Ga. Code Ann. § 40-6-392(a)(4) (1997)[7] and Ark. Code Ann.  § 5-65-204 (Michie 1997). [8]However, Mississippi's statute does not require law enforcement officials to advise the defendant of his right to an independent test. *See* Miss. Code Ann. § 63-11-13 (1996).

¶19. Additionally, the *Batista* case, which Green relies upon for authority, has been abrogated by a New York Court of Appeals decision, *People v. Finnegan*, 647 N.E.2d 758 (N.Y. 1995). Even though the court in *Finnegan* did not specifically address the notice requirement which is at issue in the case at bar, the New York Court pointed out in its analysis that

> [The d]efendant specifies at least three additional obligations not expressly prescribed in the statute: **(1) the police must give notice of the right to an independent test**; (2) the police must transport defendant to the doctor or hospital where the additional test would be performed or presumably arrange for an independent physician or technician to make a precinct call; and (3) the police must obtain the independent test within two hours of defendant's arrest.

*Finnegan*, 647 N.E.2d at 760 (emphasis added). Furthermore, in discussing the rule of statutory construction, the *Finnegan* court pointed out that "[t]he statute is starkly silent as to any implementary duties imposed on the law enforcement personnel as to notice or to direct assistance in obtaining an independent chemical test." *Id.* at 760-61. Accordingly, Green's reliance on these cases is unfounded.

¶20. "It is a well recognized principle of law in this State that ambiguity must exist in the language used by the Legislature in a statute before resort will be had to any rules of statutory construction or interpretation." *Forman v. Carter*, 269 So. 2d 865, 868 (Miss. 1972). There is no ambiguity in § 63-11-13, nor is there any requirement that law enforcement officials notify the defendant of his right to an independent test. Furthermore, a review of the case law from other jurisdictions that have addressed this issue, reveals that those states that require notification do so based upon the fact that the statute specifically provides for such. Of the thirty-three (33) states that have specifically addressed the issue at bar, fifteen (15) have statutes that do not specifically require notification,[9] sixteen (16) have statutes that do require notification,[10] and two (2) have statutes that require an excess specimen be maintained for additional testing which renders the notification requirement unnecessary.[11] Of the sixteen (16) states that have statutes that do not require notification, only one (1) has judicially imposed a duty on law enforcement to give notification even though the statute does not so provide. *See State v. Strand*, 951 P.2d 552 (Mont. 1997). Furthermore, three (3) of the states having statutes that specifically require notification, have held that failure to provide such notification does not render the police administered test results inadmissible.[12]

¶21. As stated earlier, Mississippi's statute does not provide for notification to be given regarding the individual's right to independent testing. Alabama's statute is similar to the Mississippi statute in question. In holding that law enforcement officers are not required to inform individuals of their right to an independent test, the Alabama Criminal Court of Appeals stated:

> Appellant next contends that he was denied due process of law because the arresting officer did not make a statement to him that he could have an independent blood test made at his own expense. The Legislature did provide in § 32-5A-194, Code of Alabama 1975 for such a private test at the expense of the person charged.

> There is, however, no obligation on the part of anyone to advise the defendant of the existence of this code section or of his right to alternative testing at his own expense. The Legislature does require the testing officers to inform the person being tested of the consequences of his refusal to submit to the test. The Legislature could have made a law requiring that the testing officer discuss alternative testing. They did not. We will certainly not add something which the Legislature has not required to the already complicated responsibilities of these officers.

*Bush v. City of Troy*, 474 So. 2d 164, 166 (Ala. Crim. App. 1984).

¶22. This Court adopts the majority rule declining to impose obligations that are not specifically delineated by the Legislature in the statute. As in the Alabama statutes, the affirmative duty to inform the defendant of certain rights is expressly stated in other subsections of Mississippi's Implied Consent Law.[(13)] Therefore, it follows that had the Legislature intended notification of the right to independent testing be given, it would have been expressly stated in § 63-11-13. Furthermore, as the Washington Court of Appeals pointed out there is no constitutional right to notice of the right to independent tests. *State v. Carranza*, 600 P.2d 701, 705 (Wash. Ct. App. 1979). But in ruling that the defendant must be apprized of the right to independent testing, the Washington Supreme Court expressly stated that this requirement is based upon a statutory right rather than a constitutional right. *State v. Turpin*, 620 P.2d 990, 991-92 (Wash. 1980) Additionally, as United States Supreme Court Justice O'Connor stated "persons are presumed to know their rights under the law . . .." *California v. Trombetta*, 467 U.S. 479, 492 (1984) (O'Connor, J. concurring).

¶23. It is also important to note that in the case at bar, Green did not request an independent test, but was given the opportunity to make a phone call for medical or legal assistance, which he did not exercise. Had Green exercised his right to make a phone call for legal assistance, he might have been advised to request an independent test or he might have been advised that an independent test would not be in his best interest. Nonetheless, it is not for this Court to second guess or speculate as to the legal strategies that a defense attorney may employ. Because the statute does not impose an affirmative duty on law enforcement to give notification of the right to an independent test, and Green is presumed to know his rights under the law, and was given the opportunity to obtain legal assistance, this Court holds that there is no merit to Green's claim that the results of the intoxilyzer test administered by Officer McLaurin should be suppressed.

¶24. Green further maintains that the intoxilyzer results should be suppressed because Officer McLaurin testified that he would not have allowed Green to obtain a blood test if Green had requested one. However, because Green did not request an independent test and thus was not refused such, he has no standing to assert this argument.

¶25. Furthermore, § 63-11-13 specifically states that "[t]he failure or inability to obtain an additional test by such arrested person shall not preclude the admissibility in evidence of the test taken at the direction of a law enforcement officer." Miss. Code Ann. § 63-11-13 (1996). Accordingly, the trial court's decision is affirmed.

## CONCLUSION

¶26. Green argues that his consent to the Intoxilyzer 5000 was invalid because he was never placed

under formal arrest for suspected DUI. However, Mississippi's statute and case law requires law enforcement officers to have **probable cause** before administering a test to determine blood alcohol concentration. There is no authority to support Green's contention, therefore, this Court affirms the trial court's ruling.

¶27. Green further argues that his felony DUI offense was not properly before the Circuit Court since the arresting officer failed to issue a uniform standard ticket for this charge. However, Mississippi's statute provides for an affidavit containing the same information that is required on the uniform standard ticket. Green was prosecuted in Circuit Court, not pursuant to a traffic ticket, but pursuant to an indictment charging him with felony DUI. Furthermore, the indictment was issued based upon an affidavit submitted by Investigator Lee. Therefore, this Court finds that there is no merit to Green's claim that he must be issued a Uniform Standard Ticket. Accordingly, it follows that there is no merit to Green's contention that the felony DUI charge was not properly before the Circuit Court.

¶28. Green further maintains that the intoxilyzer results were inadmissible because Officer McLaurin failed to advise him of his right to obtain an independent chemical test as provided by Miss. Code Ann. § 63-11-13 (1996). However, a review of the case law from those states that have considered this issue reveals that the vast majority of states that require such notification do so because their statutes specifically require notification. Mississippi's statute does not specifically provide for such notification. However, the Legislature has specifically provided for notification of other rights within the Implied Consent Law. Therefore, this Court adopts the majority rule declining to impose obligations that are not specifically delineated by the Legislature in the statute.

¶29. Accordingly, the trial court's decision is affirmed.

¶30. **CONVICTION OF FELONY DUI AND SENTENCE OF ONE (1) YEAR IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY A FINE OF $2,000.00 AND ALL COURT COSTS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, MILLS AND WALLER, JJ., CONCUR.**

1. Specifically, McLaurin informed Green that he had the right to refuse the intoxilyzer test which was being offered to determine his blood alcohol content and that should he elect to refuse, his driver's license would be suspended for ninety days if this is the first offense or for one year if he had been previously convicted for violation of Miss. Code Ann. § 63-11-30 (Supp. 1995).

2. Although Green's arrest occurred prior to the effective date of this statute, the pertinent parts of this statute have not been changed since the date of his arrest on July 7, 1995.

3. This section of the statute has not been changed from the statute in effect at the time of Green's arrest on July 7, 1995.

4. This statute has not been changed from its July 1, 1991 effective date.

5. This statute has not been changed since its effective date of July 1, 1981.

6. In *Mitchell*, the defendant was advised of his right to an additional blood or urine test, but was not advised that he could have another breath test. In *Qualls v. City of Clarksville*, 719 S.W.2d 702, 703 (Ark. Ct. App. 1986), the Court stated "[t]o the extent that our decision in *Mitchell* might infer that a defendant is entitled to be informed of the **full range** of additional tests available, such a holding would be in conflict with the supreme court's ruling in *Hegler v. State*, 691 S.W.2d 129 (Ark. 1985). In *Hegler*, the court held . . . that substantial compliance is all that is required."

7. The statute states in pertinent part, "[t]he arresting officer at the time of arrest **shall advise** the person arrested of his rights to a[n additional] chemical test . . .." Ga. Code Ann. § 40-6-392(a)(4) (1997).

8. The statute states in pertinent part, "[t]he law enforcement officer **shall advise** the person of [the right to an additional test]." Ark. Code Ann. § 5-65-204(e)(1) (Michie 1997).

9. *See Bush v. City of Troy*, 474 So. 2d 164 (Ala. Crim. App. 1984); *State v. Ramos*, 745 P.2d 601 (Ariz. Ct. App. 1987); *State v. Rountree*, 922 P.2d 1072, 1074-75 (Idaho Ct. App. 1996) (*citing State v. Woolery*, 775 P.2d 1210, 1216 (Idaho 1989)); *State v. Steadman*, 350 N.W.2d 172 (Iowa 1984); *State v. Adams*, 457 A.2d 416 (Me. 1983); *Ruffenach v. Commissioner of Pub. Safety*, 528 N.W.2d 254 (Minn. Ct. App. 1995); *Zadina v. Weedlun*, 190 N.W.2d 857 (Neb. 1971); *State v. Mercer*, 511 A.2d 1233 (N.J. Super. Ct. App. Div. 1986); *City of Farmington v. Joseph*, 575 P.2d 104 (N.M. Ct. App. 1978); *State v. Rambousek*, 358 N.W.2d 223 (N.D. 1984); *State v. Osburn*, 508 P.2d 837 (Or. Ct. App. 1973) (holding failure to inform does not make result inadmissible); *State v. McKinney*, 605 S.W.2d 842 (Tenn. Crim. App. 1980); *Provo City v. Werner*, 810 P.2d 469 (Utah Ct. App. 1991); *State v. York*, 338 S.E.2d 219 (W. Va. 1985).

10. *See Hegler v. State*, 691 S.W.2d 129 (Ark. 1985); *State v. Peters*, 440 S.E.2d 515 (Ga. Ct. App. 1994); *Barnhart v. Kansas Dep't of Revenue*, 755 P.2d 1337 (Kan. 1988); *Flynn v. State Dep't of Pub. Safety*, 597 So. 2d 529 (La. Ct. App. 1992), *rev'd on other grounds*, 608 So. 2d 994 (La. 1992); *Commonwealth v. Chistolini*, 650 N.E.2d 1278 (Mass. App. Ct. 1995) *vacated*, 665 N.E.2d 994 (Mass. 1996); *Harbison v. Secretary of State*, 383 N.W.2d 123 (Mich. Ct. App. 1985), *rev'd on other grounds*, 437 N.W.2d 255 (Mich. 1987); *State v. Dery*, 496 A.2d 357 (N.H. 1985); *State v. Langella*, 650 A.2d 478 (R.I. 1994); *State v. Smith*, 467 S.E.2d 110 (S.C. Ct. App.1996) *rev'd on other grounds*, 482 S.E.2d 777 (S.C. 1997); *State v. Karmen*, 554 A.2d 670 (Vt. 1988); *State v. Turpin*, 620 P.2d 990 (Wash. 1980); *City of Mequon v. Hess*, 463 N.W.2d 687 (Wis. Ct. App. 1990); *Olson v. State*, 698 P.2d 107 (Wyo. 1985).

11. *See Gunderson v. Municipality of Anchorage*, 792 P.2d 673 (Alaska 1990) (holding that effective compliance consisting of notification of the right to independent testing is a permissible alternative to preserving breath samples); *Webster v. State*, 859 P.2d 1122 (Okla. Ct. App. 1993).

12. *See Kesler v. Department of Motor Vehicles*, 459 P.2d 900 (Cal. 1969); *City of Hilliard v. Elfrink*, 672 N.E.2d 166 (Ohio 1996); *Wohlford v. Commonwealth*, 351 S.E.2d 47 (Va. Ct. App. 1986).

13. *See* Miss. Code Ann. § 63-11-5(2) (1996) which provides that the "officer **shall inform** such

person that his failure to submit to such chemical test or tests of his breath shall result in the suspension of his privilege to operate a motor vehicle upon the public streets and highways of this state for a period of ninety (90) days in the event such person has not previously been convicted of a violation of Section 63-11-30, or, for a period of one (1) year in the event of any previous conviction of such person under Section 63-11-30." (emphasis added).