Daniel T. WILSON, individually and in his capacity as administrator of the estate of adminr. Nancy B. Wilson, deceased, Betty L. Wilson, Ann Wilson, Steve Wilson, Plaintiffs–Appellants,

v.

Gaylon NORTHCUTT, S.B. Lovett, A.L. Kerstetter, Clayton County, Defendants–Appellees.

No. 92–8347.

United States Court of Appeals, Eleventh Circuit.

April 1, 1993.

Rehearing Denied May 25, 1993.

---

Wade M. Crumbley, Crumbley & Crumbley, McDonough, GA, for plaintiffs-appellants.

Beverly Holland Pritchard, Drew, Eckl & Farnham, Atlanta, GA, Larry A. Foster, Foster & Foster, Jonesboro, GA, for defendants-appellees.

Before KRAVITCH and ANDERSON, Circuit Judges, and HILL, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Appellants brought this § 1983 action on behalf of their deceased mother, Nancy Wilson, alleging violations of her Fourth and Fourteenth Amendment rights. Clayton County, Georgia and three Clayton County Deputy Sheriffs were named as defendants. The appellants alleged that the defendants-appellees violated Nancy Wilson's rights by using unreasonable and excessive force in attempting to arrest her and thereby caused her death. The district court granted summary judgment in favor of appellees. We affirm the district court, although we do so on grounds different from those stated in the district court's order.

### Background

Nancy Wilson was a fifty-eight year old resident of Clayton County. She had a history of mental illness, including a psychiatric hospitalization. On November 1, 1988, she received a speeding ticket for going 44 in a 25 mile per hour zone. A court date was set for December 1, 1988.

Sometime before her court date, Wilson sent the state court a letter entitled "Brief on Conspiracy by N.B. Wilson, Justice, United States Supreme Court." In this document, Wilson indicated that she was a Justice of the Supreme Court. She also alleged, among other things, that the police officer who gave her the ticket was a fugitive from the Warm Springs Mental Hospital, and that the police were part of a "pirate gang." Together these allegations showed Mrs. Wilson's loss of touch with reality. There is no evidence, however, that the appellees knew of the existence of this letter. Wilson failed to appear in state court on the speeding charge on December 1, 1988.

On July 21, 1989, a state court judge issued a bench warrant for Nancy Wilson's arrest because of her failure to appear in court in response to the speeding ticket. The bench warrant directed that she be arrested, but allowed bond in the amount of $200. The warrant was transmitted to the Clayton County Sheriff's Department in the usual manner. The Sheriff's Department serves approximately one thousand warrants each month. On July 25, 1989, appellee Kerstetter received a number of warrants to serve, including the one for Wilson. In addition to the information on the face of the warrant, Kerstetter was provided with a general physical description of Wilson which was generated from computer records.

Appellees Kerstetter and Lovett, dressed in Deputy Sheriff uniforms, attempted to serve the warrant on July 25, 1989. Following established procedure, upon arrival, Kerstetter went to the front door of Nancy Wilson's condominium while Lovett approached the back door. Kerstetter knocked but received no answer. Lovett told Kerstetter that a white female had entered the condominium through the back glass door. Leaving Lovett at the front, Kerstetter went to the back door. Kerstetter knocked on the back door and announced himself as a Deputy Sheriff; there was no response. Kerstetter then saw a

foot kick a board onto the track of the sliding glass door. Interpreting this action as an effort to keep the deputies out of the condominium, Kerstetter returned to the front and conferred with Lovett.

After more attempts to gain entry by knocking, Kerstetter spoke to one of Wilson's neighbors, Danny Turner. Although appellees had no knowledge of Wilson's mental health history, Turner appears to have told Kerstetter that Wilson was "crazy" or "not all there." Some of the specifics of the conversation are in dispute. Appellants contend that Turner said Wilson had a gun; appellees allege that Turner simply said Wilson might have a gun. Kerstetter informed Lovett of his conversation with Turner and called for a superior officer to come to the scene. While waiting for appellee Sergeant Northcutt to arrive at the Wilson condominium, Kerstetter continued knocking on the door and identifying himself as a Deputy Sheriff in an attempt to gain entry. There was no response.

Northcutt arrived on the scene and was informed of all the events that had taken place up to that point. Northcutt too knocked on the door to no avail. Northcutt attempted to contact Wilson by telephone, but she did not answer. Kerstetter told Northcutt that there was an open window in the Wilson condominium which could be used as a point of entry for the deputies. Northcutt approved the plan and Kerstetter climbed through the window. The parties disagree as to whether Kerstetter had to force the window open with a pocket knife or whether the window was already open. Kerstetter then opened the door for Northcutt and Lovett.

After a brief search, the deputies concluded that Wilson had locked herself in the upstairs bathroom. Northcutt knocked on the bathroom door and identified himself as a Deputy Sheriff. Northcutt ordered Wilson to open the door because he had a warrant for her arrest. Wilson responded that she had not been speeding and threatened to kill herself. Appellees claim that Northcutt did not believe that Wilson had a gun. Northcutt decided to open the bathroom door. Appellants allege

Northcutt ordered the door "broken down." According to appellees, Northcutt instructed Lovett to pick the lock. In any event, as the door was being opened, it became clear that Wilson had secured the door with a board. When the deputies pushed the door open about a foot, one of the deputies saw that Wilson did have a gun.

The deputies retreated down the hallway, away from the bathroom. The deputies then heard two shots. Nancy Wilson had shot herself. The deputies returned to the bathroom and saw Wilson lying in the bathtub. Kerstetter called for an ambulance and then performed CPR until it arrived. Wilson was pronounced dead at Clayton General Hospital.

This incident was the subject of an internal affairs investigation by the Sheriff's Department. The deputies were found to have complied with all of the Department's rules and procedures. Appellants filed this action under 42 U.S.C. § 1983, alleging that Nancy Wilson's Fourth and Fourteenth Amendment rights were violated by the deputies' actions. The district court granted summary judgment in favor of the appellees on the theory that Wilson had not been seized and thus there was no Fourth Amendment violation and that Supreme Court precedent precluded the Fourteenth Amendment claim.

## Discussion

■ We review a grant of summary judgment *de novo* and apply the same standards used in the district court. *Martin v. Commercial Union Ins. Co.*, 935 F.2d 235, 238 (11th Cir.1991).

■ As to appellants' Fourth Amendment claim, the district court noted correctly that Nancy Wilson was not seized under the standard established in *California v. Hodari D.*, —— U.S. ——, ——, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991). *Hodari* teaches that a person is not seized within the meaning of the Fourth Amendment when in response to a show of authority, without physical force, the subject does not yield. *Hodari*, —— U.S. at ——, 111 S.Ct. at 1550. Mrs. Wilson was not subjected to physical force. Furthermore,

she did not yield or submit when the deputies commanded her to come out of the bathroom. We conclude that Nancy Wilson was not seized, thus there was no violation of a Fourth Amendment right.

▪ Appellants also allege that the deputies violated Nancy Wilson's substantive due process rights under the Fourteenth Amendment. The district court believed that the Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), precluded a Fourteenth Amendment substantive due process claim in the instant case. As such, before we consider whether the deputies' conduct violated Wilson's due process rights, we must first determine if a due process theory was even available in this case. Whether a Fourteenth Amendment claim survives *Graham* when there is no seizure is a question of first impression in this circuit. We conclude that it does.

In *Graham*, the Supreme Court held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." 490 U.S. at 395, 109 S.Ct. at 1871 (emphasis in original). In the instant case, however, Wilson was not "seized." The *Graham* court did not address whether excessive force claims which do not involve seizures are actionable under 42 U.S.C. § 1983.

The First, Sixth and Ninth Circuits have held that this type of Fourteenth Amendment claim survives *Graham.* In *Pleasant v. Zamieski*, 895 F.2d 272, 276 n. 2 (6th Cir.1990), the Sixth Circuit stated that *Graham*'s broad phrasing would still "preserve fourteenth amendment substantive due process analysis for those instances in which a free citizen is denied his or her constitutional right to life through means other than a law enforcement official's arrest, investigatory stop or other seizure." The First Circuit simply stated that it "assume[s] that claims of excessive force outside the context of a seizure still may be analyzed under substantive due process principles." *Landol–Rivera v. Cruz Cosme*, 906 F.2d 791, 796 (1st Cir.1990); *see, also, Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1408 n. 10 (9th Cir.1989), *cert. denied* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). We are persuaded by the reasoning of our sister circuits. As such, we hold that a non-seizure Fourteenth Amendment substantive due process claim of excessive force survives *Graham.*

▪ Having concluded that a Fourteenth Amendment claim may be brought, the next question is whether the conduct in the instant case violated due process. The proper standard to be applied when evaluating these claims is not clear. *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), indicates that a "shocks the conscience" criterion is our starting point. This circuit, however, has adopted the more concrete standards for identifying a substantive due process violation that were laid out in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1974). *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500–01 (11th Cir.1985) (en banc), *cert. denied* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).

The *Johnson* criteria include such factors as the need for force, the relationship between the need for force and the amount of force used, the extent of injury inflicted, and " 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Gilmere*, 774 F.2d at 1501, quoting *Johnson*, 481 F.2d at 1033. Thus, the reason for the use of force is a component in this equation. In the instant case, the deputies were reasonably attempting serve a valid warrant. The deputies did not know that Wilson was mentally disturbed or that she definitely had a gun in the bathroom. It may have been a lapse in judgment for the deputies to push open the bathroom door, but their conduct was not even grossly negligent.

The Supreme Court has left open the question of "whether something less than

intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Daniels v. Williams*, 474 U.S. 327, 334 n. 3, 106 S.Ct. 662, 666 n. 3, 88 L.Ed.2d 662 (1986). This circuit has not resolved the issue of whether gross negligence is sufficient to support a § 1983 claim against a state actor. *Cf. Gilmere*, 774 F.2d at 1503–04 (concerning municipal liability). Because we have concluded that the appellees' conduct did not rise to the level of gross negligence, we leave for another day the determination of whether gross negligence can support a § 1983 claim. All that we need say today is that on the facts of this case, the appellants have not established a due process violation.

The district court was correct in granting summary judgment in favor of the appellees. The district court was not correct in granting summary judgment on the ground that a Fourteenth Amendment substantive due process claim could not be established after *Graham*. Summary judgment was proper because the appellees conduct did not violate Wilson's Fourth Amendment rights or her Fourteenth Amendment due process rights.

Accordingly, we AFFIRM.

ANDERSON, Circuit Judge, concurring: I concur in the result.