Charles SWEATT, Plaintiff,

v.

Chuck BAILEY, et al., Defendants.

Civ. A. No. 94–T–617–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 31, 1995.

Banks Thomas Smith, Hall, Sherrer & Smith, Dothan, AL, for plaintiff.

Norman Gunter Guy, Jr., Brannan & Guy, P.C., Montgomery, AL, for defendants.

### *ORDER*

MYRON H. THOMPSON, Chief Judge.

Plaintiff Charles Sweatt charges in this lawsuit that the defendants—Andalusia Chief of Police Jerry Williamson and police officers Chuck Bailey and Robby Messick in their individual and official capacities—intended to deprive him of his right to freedom from physical abuse, coercion, and intimidation guaranteed by 42 U.S.C.A. § 1985 (West 1981), 18 U.S.C.A. § 245 (West 1969 & Supp. 1994), and the first, fourth, fifth, eighth, and fourteenth amendments to the United States Constitution, as enforced by 42 U.S.C.A. § 1983 (West 1994).[1] Sweatt also brings state law claims for assault and battery, emotional distress, negligent employment, retention of incompetent employees, and failure to supervise, discipline, and train. Sweatt asks for compensatory and punitive damages. He invokes the court's jurisdiction under 28 U.S.C.A. § 1343(a)(3) (West 1993) and 28 U.S.C.A. § 1331 (West 1993). This lawsuit is now before the court on the defendants' motion for summary judgment. For the reasons given below, the motion is granted in part and denied in part.

## I. BACKGROUND

On the night of March 1, 1993, officers Messick and Bailey arrested Sweatt for driving under the influence of alcohol and took him to the police station in Andalusia, Alabama for booking. There are conflicting accounts of what happened before, during, and after the booking procedure. This background discusses only those facts necessary to resolve the summary judgment motion before the court.

---

1. Sweatt's original complaint omitted the fourth amendment claim. Sweatt filed a motion to amend his complaint to include the fourth amendment claim on January 20, 1995. The court granted the motion on January 31, 1995.

The defendants claim that Sweatt was uncooperative and threatening. They admit officers forcibly placed Sweatt in a chair, and they further admit that there was "an encounter" between police officers and Sweatt, but they insist that "minimal force" was used and Sweatt was uninjured.[2] Messick testified at a deposition that he did not strike Sweatt.[3] Messick's written report, however, states that he and Officer Scott Simmons used force to place Sweatt in a chair.[4]

Sweatt bases his version of the events primarily on an unverified, but unchallenged, transcript of an audio tape of part of the incident and on his deposition testimony. Sweatt's response to the motion for summary judgment alleges that he was on the phone and stated that one of the officer's was an "ass."[5] According to Sweatt, Messick hit him several times in the head.[6] Messick also allegedly cursed at him.[7] Officer A.L. Ricks described the incident as an "altercation" and said Messick lost his temper.[8] Sweatt further stated that Bailey was present during the alleged attack.[9] On the basis of his version of the events on March 1, 1993, Sweatt is suing Messick for the alleged incident and Bailey for failing to prevent the alleged incident.

In addition to accounts of the incident in question, other facts are important with regard to Chief Williamson's liability as a supervisor. Messick admits that, before his employment with the Andalusia Police Department, he was terminated from the Opp Police Department.[10] Messick's termination occurred after at least one conference about his temper and a warning for slapping a prisoner during an argument started by Messick.[11] According to Messick, Williamson was among those who interviewed him for the Andalusia job.[12] Williamson does not remember interviewing Messick.[13] Messick also stated that he never received training about how to handle intoxicated people, even though he often had to deal with people under the influence of alcohol.[14] Chief Williamson stated that such training was provided.[15] Messick further stated that he was never disciplined or reprimanded for his actions towards Sweatt.[16] Officer Simmons testified at his deposition that he had seen Messick lose his temper on at least three occasions.[17] Simmons further testified that on one of those occasions, Messick struck someone with a flashlight.[18] Simmons reported this incident to supervisors and, at some point, to Chief Williamson.[19]

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking sum-

---

2. Defendants' brief in support of motion for summary judgment, filed on September 26, 1994, at 3. These allegations are supported by Messick's written report of the incident and, in part, by depositions of Messick and Bailey.

3. Messick Dep. at 31.

4. Exhibit E to defendants' motion for summary judgment.

5. Plaintiff's brief in response to defendants' motion for summary judgment, filed on November 14, 1994, at 2. This allegation is supported by the transcript of the audio tape.

6. Sweatt Dep. at 27–28, 30–34.

7. *Id.* at 41–42.

8. Ricks Dep. at 25–26.

9. Sweatt Dep. at 34.

10. Messick Dep. at 7.

11. Exhibits 1–3 to plaintiff's amendment to brief in response to defendants' motion for summary judgment.

12. Messick Dep. at 10.

13. Williamson Dep. at 19.

14. Messick Dep. at 37–38.

15. Williamson Dep. at 26.

16. Messick Dep. at 46.

17. Simmons Dep. at 40.

18. *Id.* at 59.

19. *Id.* at 44–45.

mary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how responsibilities on movant and nonmovant vary depending on who bears burden of proof at trial).

## III. FEDERAL STATUTORY CLAIMS

### A. *Section 1985*

Sweatt's complaint does not specify which subsection of 42 U.S.C.A. § 1985 (West 1981) he claims the defendants violated. His brief, however, quotes only the second clause of § 1985(2).[20] The court assumes that this is the relevant provision. The United States Supreme Court has held that the "second part of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts." *Kush v. Rutledge,* 460 U.S. 719, 725, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983). Sweatt has not even alleged any obstruction of justice in state court, let alone produced facts to support such an allegation. Accordingly, summary judgment is granted as to this claim.

### B. *Section 245*

It is not immediately apparent to the court how 18 U.S.C.A. § 245 (West 1969 & Supp. 1994), which is a criminal statute concerning federally protected activities, applies to Sweatt's factual claims. Sweatt makes no § 245 argument in his response to the motion for summary judgment. In fact, Sweatt omits § 245 from the list of claims in his brief. Therefore, the court assumes that Sweatt is no longer pursuing his § 245 claim and grants summary judgment on that claim.

## IV. FEDERAL CONSTITUTIONAL CLAIMS

■ Sweatt charges the defendants with violating his rights under the first, fourth, fifth, eighth, and fourteenth amendments to the United States Constitution, as enforced by 42 U.S.C.A. § 1983. To establish that a defendant is liable in his or her individual capacity under § 1983, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). To establish official-capacity liability, there must also be a policy or custom behind the deprivation. *Id.* The defendants do not dispute that they were acting under color of state law. They do contend, however, that Sweatt was not deprived of any federal rights and that they are immune from suit in both their individual and official capacities.

### A. *Qualified Immunity for Officers Messick and Bailey*

■ Officers Messick and Bailey claim that they are entitled to qualified immunity in their individual capacities. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ A two-step analysis is followed to determine whether an official is entitled to qualified immunity. The defendant must first show that he or she was acting within the scope of discretionary authority at the time of the alleged conduct. Once this is shown, the plaintiff must prove that the official's conduct violated clearly established law. *E.g., Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir.1992).

#### 1. *Scope of Discretionary Authority*

The court turns to the first prong, the scope of discretionary authority. Sweatt argues that because the booking process is ministerial rather than discretionary in nature, the defendants cannot meet their burden of proof in showing they were acting within the scope of their discretionary authority. The Eleventh Circuit Court of Appeals recently rejected an argument based on the distinction between ministerial and dis-

---

**20.** Plaintiff's brief in response to defendants' motion for summary judgment at 9.

cretionary acts in *Jordan v. Doe*, 38 F.3d 1559, 1565–66 (11th Cir.1994). In that case, the district court found that qualified immunity did not apply because the defendants had failed to show that the act of transporting a prisoner was discretionary. The appellate court reversed, finding that basing a decision on whether an act is ministerial or discretionary too narrowly interprets the first part of the qualified immunity test. Under this analysis, the court rejects Sweatt's contention that the mere character of the act of booking is decisive.

■ Instead, in order to show that he acted within the scope of discretionary authority, a defendant "must demonstrate objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir.1981);[21] *accord Jordan*, 38 F.3d at 1566; *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir.1988). This is not a difficult burden to meet because of the level of generality at which this requirement must be interpreted. In *Rich*, the Eleventh Circuit asked whether an investigator is within his job duties and authority when he submits a probable cause affidavit, not when he submits a probable cause affidavit without a reasonable basis, as the plaintiff alleged. 841 F.2d at 1562, 1564. In *Jordan*, the Eleventh Circuit asked whether it was within the job duties and authority of a federal marshall to transport detainees between facilities, not to transport detainees to overcrowded, unsanitary facilities. 38 F.3d at 1564–66.

■ Similarly, the question in the lawsuit before this court is not asked with regard to "beating an arrestee," but with regard to "controlling an arrestee." Although the defendants have submitted no evidence on this issue, it is apparent to the court that, as a general matter, police officers must perform the duty of controlling persons after arrest. It is also within the scope of the authority of police officers to perform this duty. This is not to condone the use of profanity and unnecessary force. However, these alleged acts are more properly considered in the second step of the test where the court examines the actual conduct of the officers to see if the specific situation is governed by clearly established law.[22]

### 2. *Clearly Established Law*

■ The court now turns to the clearly established law prong of the qualified immunity test. This prong must be met not through references to general propositions, but through the specifics of concrete cases. *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149–50 (11th Cir.1994) (en banc). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances.*" *Id.* at 1150. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Id.* at 1149. Thus, "qualified immunity for government officials is the rule, liability and trials for liability the exception." *Alexander v. University of North Florida*, 39 F.3d 290, 291 (11th Cir. 1994) (per curiam). "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter*, 28 F.3d at 1149. This is one of those rare cases where this demanding standard has been met.

---

21. In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

22. The court does not reach whether the defendants would be unable to meet their burden under the scope of discretionary authority prong if they had violated a policy or procedure of the police department. Admittedly, there is some evidence that this did occur. For instance, Simmons and Officer J.D. Shakespeare testified that the conduct they heard on the audio tape of the incident violated Andalusia police policies and procedures. Simmons Dep. at 47–48; Shakespeare Dep. at 30. However, the actual policies have not been submitted to the court. Without this evidence, the court is reluctant to consider the question of whether it can ever be within an officer's discretion to violate a policy or procedure.

Fortunately, the court has before it a transcript of an audio tape of part of the incident in question. The court begins its inquiry with the transcript, which reads as follows:

"Charles Sweatt: I'm making a call at 11:37 p.m. I'm at the Police Department in Andalusia, they are suppose to transport me from here to the hospital to get blood test, and uh they are very unruly, turn it over to who ever you want to tomorrow, ok. It is 11:37 now, and there's one ass over here that's suppose to be —

"At this point there is a lot of bumping for an undetermined amount of time.

"Robby Messick: I'll kick your fucking ass now I'm fixing to do it god damn it and I'm gonna do it you hear me, god damn it I put up with it every god damn (in the background here, you can hear someone saying Robby, Robby) week that's how much pressure I've been through—

"At this point there is a lot of bumping and rattling and you can hear Messick yelling but it is hard to decipher.

"Robby Messick: Huh, I been fucking tired of you boy.

"More banging and loud noises.

"Robby Messick: god damn son of a bitch.

"Unidentified person: Come on now.

"Robby Messick: You pushed me mother fucker, you god damn right.

"Unidentified person: Come on brother.

"Robby Messick: god damn son of a bitch. You know it.

"At this point the phone is hung up." [23]

Based on this transcript and Sweatt's testimony that he was beaten by Messick, the trier of fact could find that Messick used not only excessive but totally unnecessary force against Sweatt. The trier of fact could further find that Sweatt, who was on the phone, posed no danger at the time of the alleged use of the force and that Messick was acting not to maintain order, but summarily and maliciously to punish Sweatt because he did not like what Sweatt had said.

 Courts must recognize that police officers have a difficult and dangerous job.

Officers must be given the flexibility to pursue their duties and make tough choices on a moment's notice without fear of a lawsuit based merely on hindsight. *See Tennessee v. Garner,* 471 U.S. 1, 20, 105 S.Ct. 1694, 1706, 85 L.Ed.2d 1 (1985); *Harrell v. Decatur County,* 22 F.3d 1570, 1580 (11th Cir.1994) (Dubina, J., dissenting), *adopted on rehearing,* 41 F.3d 1494 (11th Cir.1995). Nevertheless, viewing the facts in favor of Sweatt, Messick's malicious and summarily punitive infliction of harm transgressed clear constitutional bounds—indeed, bounds so broadly recognized and accepted as to have been incorporated into most of the primary constitutional provisions constraining the conduct of law enforcement officials. It cannot be denied that "one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer," *Norwell v. City of Cincinnati,* 414 U.S. 14, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973) (per curiam) (first amendment), that if "officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated," *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (eighth amendment), that officials cannot "summarily and maliciously inflict harm in retaliation for past conduct," *Ort v. White,* 813 F.2d 318, 324 (11th Cir.1987) (eighth amendment), that "police use of excessive force is a constitutional violation," *McKinney v. DeKalb County,* 997 F.2d 1440, 1443 (11th Cir.1993) (fourth and fourteenth amendments), that police officers cannot use "deliberate acts of punishment" as opposed to "reasonable means of restraining an arrestee," *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1441 (11th Cir.1985) (fourteenth amendment), and that officers are liable if a beating occurs " 'with little or no provocation' " and " 'the blows were not delivered in a good faith effort to control ..., but rather out of irritation'." *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1501 (11th Cir.1985) (en banc) (fourteenth amendment) (quoting district court), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).

**23.** Plaintiff's brief in response to defendants' motion for summary judgment at 6–7 (transcription of audio tape). This unchallenged transcript was taken verbatim from Sweatt's brief.

Messick's alleged conduct is not comparable to a split-second decision when an officer is physically threatened. It does not take hindsight or tortured reasoning to conclude that, if, as Messick's fellow officer stated, Messick lost his temper and was therefore not acting to control Sweatt, and if, as Sweatt stated, Messick beat Sweatt without provocation, then Messick's conduct was not only malicious and sadistic but summarily punitive, taking on the roles of grand jury, judge, and jury to indict, try, and punish Sweatt. Taking the law into one's own hands is precisely what the legal system attempts to prevent. Any police officer, sworn to uphold the law, must know this basic concept.

■ Indeed, this principle is so well established that criminal law holds officers accountable for the use of excessive and unnecessary force. Federal law provides criminal penalties under 18 U.S.C.A. § 242 (West Supp.1994) for someone who, under color of law, willfully deprives a person of a right, privilege, or immunity guaranteed by the Constitution or federal statute. It is settled law that § 242 applies to the use of excessive force by police officers against a person in Sweatt's situation. *United States v. Myers*, 972 F.2d 1566 (11th Cir.1992) (upholding jury conviction under § 242 of police officer who used stun gun against two arrestees in police station before they were charged), *cert. denied*, —— U.S. ——, 113 S.Ct. 1813, 123 L.Ed.2d 445 (1993); *United States v. Stokes*, 506 F.2d 771 (5th Cir.1975) (upholding jury conviction under § 242 of police officer who beat verbally abusive arrestee after taking him to police station for booking). These cases dictate the conclusion that a police officer can be found guilty of a crime for the use of excessive force against someone in Sweatt's situation. No reasonable officer would take action that is prohibited by criminal law.

■ If Sweatt's view of the incident is correct, the conclusion is compelled that Messick committed a grievous wrong for which he is not only civilly but potentially criminally liable. Messick lost control over his behavior, apparently not for the first time. Only an incompetent officer—a "bad apple" who could not control his behavior— would summarily and excessively punish an arrestee who was talking on the phone. The Eleventh Circuit, speaking en banc, has made clear that qualified immunity is not meant to protect an "incompetent officer." *Lassiter*, 28 F.3d at 1149. When an officer does behave like Messick, therefore, a limited exception to the general rule of qualified immunity is justified. It remains to examine which of the constitutional underpinnings to Sweatt's claims survive scrutiny.

### a. *First Amendment*

Sweatt has not discussed the basis of his first amendment claim. The court assumes that his claim is that Messick retaliated against him for referring to Messick as an "ass" while on the phone.[24] The court begins by deciding the correct level of specificity under which to examine the incident in the first amendment context.

■ In a case involving the refusal to rehire a teacher, the Supreme Court held that a first amendment claim exists when a government actor retaliates because of the exercise of free speech. *Mt. Healthy School Dist. v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). A proposition at this level of generality, however, does not establish the law in the police context. *See Rodgers v. Horsley*, 39 F.3d 308, 311 (11th Cir.1994) (per curiam). On the other hand, the facts of a relevant precedent do not have to be the same, only "materially similar." *Adams v. St. Lucie County Sheriff's Dept.*, 962 F.2d 1563, 1575 (11th Cir.1992) (Edmondson, J., dissenting), *approved en banc*, 998 F.2d 923 (11th Cir.1993); *accord Lassiter*, 28 F.3d at 1150. The court believes the relevant level of generality to be as follows: the law must be clearly established that an on-duty police officer cannot punish

---

24. The defendants claim Sweatt used obscene language and made threats. Exhibits B, E to defendants' motion for summary judgment. Sweatt claims he did nothing to provoke Messick. Sweatt Dep. at 31. Sweatt's testimony, if believed, would allow the trier of fact to find that Messick reacted solely to being referred to as an "ass." The court does not address whether a valid first amendment claim would exist if the defendants' view of the facts prevailed.

someone for using constitutionally protected speech. The court begins by examining whether this concept has been clearly established. The court then examines whether Sweatt's words fall under an exception to the protection generally accorded speech.

### i. *Punishment of Speech by an Officer*

■ It has been clearly established, at least since *Terminiello v. City of Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949), that although freedom of speech is not absolute, it is "protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." The Court followed this principle in *Norwell v. City of Cincinnati*, 414 U.S. 14, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973) (per curiam), where a man was arrested for disorderly conduct for being loud and boisterous and annoying a police officer. The Court voided the arrest because "one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer." *Id.* at 16, 94 S.Ct. at 188. An arrest, therefore, is improper punishment for protected speech.

■ The Eleventh Circuit has further noted that a policeman "could be expected to absorb a certain amount of abuse without retaliating physically." *Lamar v. Banks*, 684 F.2d 714, 718 n. 13 (11th Cir.1982). In like vein, the Supreme Court found an ordinance prohibiting verbal interruptions of police officers unconstitutionally overbroad in *City of*

*Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). The Court held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Id.* at 461, 107 S.Ct. at 2509.[25] Although *Hill*, unlike *Norwell*, dealt with a facial challenge to an ordinance instead of a police officer's actions, the Court's reasoning in *Hill* applies to the latter situation as recognized by *Hancock v. Hobbs*, 967 F.2d 462, 469 (11th Cir.1992) (per curiam). In *Hancock*, the Eleventh Circuit addressed a claim of excessive force and arrest without probable cause. The plaintiff claimed the jury had been improperly instructed about her "constitutional right to use profanity toward the arresting officer." The court held that in the context of the charge as a whole, "omitting to instruct the jury that Hancock's use of profanity was constitutionally protected" was not prejudicial. By those words, however, the Eleventh Circuit adopted the view that the use of profanity toward an arresting officer is protected speech. In a parenthetical, the Eleventh Circuit interpreted the holding in *Hill* to be that "provocative speech directed at arresting officer is protected under the first amendment unless it is 'shown likely to produce a clear and present danger of a serious substantive evil.'" *Id.*[26] This is precisely the view compelled by reading *Terminiello*, *Norwell*, and *Hill* together.

How much more did Messick need to know to understand his conduct was wrong? The above Supreme Court and Eleventh Circuit cases establish that the first amendment protects verbal challenges to police officers and

---

**25.** Justice Powell noted the breadth of the holding, stating that the majority appeared to "extend First Amendment protection to any type of verbal molestation or interruption of an officer in the performance of his duty." *Hill*, 482 U.S. at 480, 107 S.Ct. at 2519 (Powell, J., concurring in the judgment in part and dissenting in part). The majority in *Hill* maintained that contentious speech could be punished to the extent the speaker physically obstructs the officer. *Id.* at 462 n. 11, 107 S.Ct. at 2510 n. 11 (majority opinion). Other than that, the majority did not quarrel with Justice Powell's characterization, noting that "if some constitutionally unprotected speech must go unpunished, that is a price worth paying to preserve the vitality of the First Amendment." *Id.*

**26.** The Eleventh Circuit is not alone in this recognition. The Fifth Circuit held that *Hill* dictates that police officers cannot make an arrest in response to annoying speech. *Enlow v. Tishomingo County*, 962 F.2d 501, 509 (5th Cir.1992). The Ninth Circuit denied qualified immunity to a police officer who allegedly arrested and injured a man based on obscenities directed towards the officer, holding that *Hill* clearly established such punishment to be a violation of the first amendment. *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir.1990). Prior to *Hill*, the Seventh Circuit found that an arrest in response to asking "did you shoot my dog?" and stating "I want my damn dog" would violate the first amendment. *Bailey v. Andrews*, 811 F.2d 366, 372 (7th Cir. 1987).

forbids a police officer from punishing a person engaged in merely annoying speech. Although these cases, with the possible exception of *Hancock*—the opinion is unclear on this point—did not arise in the context of the use of excessive force, that difference is immaterial. The relevant feature is punishment for protected speech. Excessive force is as much a punishment as an arrest. Could anyone possibly argue that it would have been all right if the officer in *Norwell* had "merely" beaten the man instead of arresting him?

ii. *The "Fighting Words" Exception*

The first amendment does not protect all speech. "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem [under the first amendment]." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). The exception relevant to this case is the "fighting words" exception defined by the Supreme Court in *Chaplinsky* as words "likely to provoke the average person to retaliation, and thereby cause a breach of the peace." *Id.* at 574, 62 S.Ct. at 770. The Supreme Court has, since *Chaplinsky*, narrowly construed the "fighting words" exception. *E.g.*, *Texas v. Johnson*, 491 U.S. 397, 409, 109 S.Ct. 2533, 2542, 105 L.Ed.2d 342 (1989); *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Cohen v. California*, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785–86, 29 L.Ed.2d 284 (1971).

■ Neither Sweatt nor the defendants have discussed whether, in the context of the incident in question, Sweatt's speech rose to the level of "fighting words." The trier of fact could find that Sweatt's remarks were not directed toward Messick but were rather a description of Messick to the person Sweatt was attempting to reach on the phone. Assuming this view of the facts prevails, the

court has no doubt that calling a law enforcement officer an "ass" within his earshot in the 1990's should not provoke a violent reaction and therefore does not fall within the "fighting words" doctrine. If the Supreme Court's comments in *Hill* and the Eleventh Circuit's comments in *Lamar* regarding the necessity of law enforcement officers being able to accept some abuse have any content, telling a third party that an officer is an "ass" must be able to be absorbed by the officer.[27]

With regard to the first amendment claim, the court holds that it is clearly established law that a police officer cannot punish an arrestee for the use of protected speech. The court further holds that Sweatt's speech, under his view of the facts, would be protected. Accordingly, the court denies Messick qualified immunity on the first amendment claim. Because it is not clearly established that the first amendment places constraints on nonfeasance, however, the court grants Bailey qualified immunity on this claim.

b. *Fourth and Fourteenth Amendments*

■ The court now turns to the use of excessive force outside the context of punishment for speech. As of 1990, it is unquestionable that "police use of excessive force is a constitutional violation." *McKinney v. De-Kalb County*, 997 F.2d 1440, 1443 (11th Cir. 1993).[28] Based on this holding, the Eleventh Circuit allowed fourth and fourteenth amendment claims to proceed, denying qualified immunity to a police officer who had allegedly used excessive force. After this ruling, any reasonable officer would know that the use of excessive force is redressable under either the fourth or the fourteenth amendment. That much is clearly established. What the court finds unclear is whether Sweatt's claim is only to be allowed under the fourth or the fourteenth amendment. In the situation described below, this lack of

---

27. The Eighth Circuit has explicitly held that "use of the word 'asshole' could not reasonably have prompted a violent response from the arresting officers" and therefore falls outside the "fighting words" doctrine. *Buffkins v. City of Omaha*, 922 F.2d 465, 472 (8th Cir.1990), *cert. denied*, 502 U.S. 898, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991).

28. Although this opinion was issued on August 17, 1993, after the incident involving Messick and Sweatt, the court held that the law was clearly established as of at least 1990. *McKinney*, 997 F.2d at 1443.

clarity as to the correct ground is not enough to defeat qualified immunity because, either way, police officers know under *McKinney* that they will be held accountable for the use of excessive force.

To the extent that Sweatt brings a claim for use of excessive force during a "seizure," the Supreme Court has held that the claim should be analyzed under the fourth amendment rather than the fourteenth amendment substantive due process clause. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). In Sweatt's case, the court must determine whether Sweatt was seized during the booking procedure in order to determine whether the fourth or fourteenth amendment applies. If the explicit language of the fourth amendment prohibiting unreasonable seizures applies, then the more general substantive due process analysis is inappropriate. *Id.* at 395, 109 S.Ct. at 1871.

"Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). An arrest is the quintessential example of a seizure. *California v. Hodari D.,* 499 U.S. 621, 624, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991). The question is whether the seizure continues after the actual moment of arrest.

 In defining a seizure in *Graham,* the Supreme Court noted that it had "not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins." 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10. This statement suggests that "arrest" for fourth amendment purposes encompasses more than the moment of arrest, but continues until pretrial detention begins. In addition, because the statement questions only whether the fourth amendment applies once pretrial protection begins, the statement also implies that fourth amendment protection against excessive force governs at least until pretrial detention begins.

Prior to *Graham,* the Seventh Circuit had rejected the application of the fourth amend-ment to excessive force occurring after the moment of arrest. *Wilkins v. May,* 872 F.2d 190, 192–94 (7th Cir.1989), *cert. denied,* 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990). Instead, the court held that the fourteenth amendment applied. *Id.* at 194–95. Even before *Graham,* however, the fourth amendment analysis in *Wilkins* was subject to dispute. The Ninth Circuit had reached a contrary conclusion in *Robins v. Harum,* 773 F.2d 1004, 1010 (9th Cir.1985) ("once a seizure has occurred, it continues throughout the time the arrestee is in the custody of the arresting officers").

Since *Graham,* a number of Circuit Courts have applied the fourth amendment to incidents of excessive force occurring after the moment of arrest. In the § 242 case of *United States v. Myers,* 972 F.2d 1566, 1571–72 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1813, 123 L.Ed.2d 445 (1993), the Eleventh Circuit upheld a fourth amendment jury instruction in a post-arrest, precharge excessive force case. Although this was a criminal case, it implicates the same concepts as a civil case. Other Circuit Courts have applied the fourth amendment after the moment of arrest in civil cases. *Austin v. Hamilton,* 945 F.2d 1155, 1159–60, 1162 (10th Cir.1991) (holding fourth amendment applies to excessive force occurring up to first judicial hearing); *Powell v. Gardner,* 891 F.2d 1039, 1044 (2d Cir.1989) (examining under fourth amendment excessive force occurring at police station after moment of arrest); *Hammer v. Gross,* 884 F.2d 1200, 1204 (9th Cir.1989) (applying fourth amendment analysis to excessive force occurring during blood test at hospital after moment of arrest), *vacated en banc on other grounds,* 932 F.2d 842, 845 n. 1 (9th Cir.1991) (noting agreement with application of fourth amendment), *cert. denied,* 502 U.S. 980, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991). *But see Titran v. Ackman,* 893 F.2d 145, 147 (7th Cir.1990) (following reasoning of *Wilkins* ).

 The court is left with the impression that the Supreme Court is contracting the scope of substantive due process under the fourteenth amendment, even while it is expanding the scope of the fourth amend-

ment.[29] On balance, the Circuit Courts are following the implication of *Graham* that fourth amendment protection against excessive force continues to apply after the moment of arrest and, for Sweatt's purposes, at least to the booking procedure if not longer. Based on these cases, the court is of the opinion that Sweatt was seized at the time of the alleged excessive force. Under *Graham,* therefore, Sweatt would have a fourth amendment claim and no fourteenth amendment claim.

If, instead, Sweatt was not seized at the time of the alleged use of excessive force, then Sweatt would have a fourteenth amendment claim. The Eleventh Circuit recognized a "non-seizure Fourteenth Amendment substantive due process claim of excessive force" in *Wilson v. Northcutt,* 987 F.2d 719, 722 (11th Cir.1993). This decision, however, was not reached until April 1, 1993, a month after the incident in question in Sweatt's lawsuit. The Eleventh Circuit held that pre-arrest, non-seizure claims under the fourteenth amendment were not clearly established until *Wilson* in *Swint v. City of Wadley,* 5 F.3d 1435, 1448 (11th Cir.1993) (per curiam), *modified,* 11 F.3d 1030 (11th Cir. 1994), *cert. granted,* —— U.S. ——, 114 S.Ct. 2671, 129 L.Ed.2d 808 (1994). Under *Swint,* it appears that at the time of the incident involving Sweatt, the law was not clearly established that excessive force could violate substantive due process rights. The court notes, however, that neither *Wilson* nor *Swint* addressed the possibility of a non-seizure claim in the post-arrest context. Thus, it is possible that even under *Swint,* it was clearly established that the fourteenth amendment applied post-arrest before *Wilson* was decided.

The court does not, however, determine at this point whether Sweatt's post-arrest excessive force claim should be brought under the fourth or the fourteenth amendment.

Because under *McKinney* it was clearly established as of 1990 that the use of excessive force is a constitutional violation, either the fourth or the fourteenth amendment must apply. Although, for the reasons discussed above, the court leans heavily toward applying the fourth amendment, the court will for the moment, in the interests of not having to try the case twice, allow the fourteenth amendment claim to proceed as well, an approach that is not without precedent. Even after *Graham*—where the Supreme Court indicated that if the explicit language of the fourth amendment prohibiting unreasonable seizures applies, then the more general substantive due process analysis is inappropriate, 490 U.S. at 395, 109 S.Ct. at 1871—the Eleventh Circuit in *McKinney* allowed a fourth amendment seizure claim and a fourteenth amendment due process claim to proceed at the same time in an excessive force suit. 997 F.2d at 1440.

■ Accordingly, Messick is denied qualified immunity on the fourth and fourteenth amendment claims. As to Bailey, the Eleventh Circuit has held that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his non-feasance." *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985). Assuming Messick's assertion that Bailey was present to be true, there is no evidence that Bailey took any steps to protect Sweatt. Accordingly, Bailey is not entitled to qualified immunity on the fourth and fourteenth amendment claims.

### c. *Fifth Amendment*

■ If no constitutional right is at stake, then qualified immunity should be granted because the law necessarily cannot be clearly established. *See Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). The due process clause

---

29. The expansive interpretation of the scope of the fourth amendment was continued in a recent Supreme Court case involving the right to be free from criminal prosecution except with probable cause. *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion). In *Albright,* the Court rejected a substantive due process claim under the fourteenth amendment because the fourth amendment addressed "the matter of pretrial deprivations of liberty." *Id.* at ——, 114 S.Ct. at 813. Justice Ginsburg noted in a concurrence that at common law, seizure continued even after an arrestee was released from custody. *Id.* at ——, 114 S.Ct. at 815 (Ginsburg, J., concurring).

of the fifth amendment applies only to the federal government. *Bartkus v. State of Illinois,* 359 U.S. 121, 124, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959). Sweatt has alleged no federal participation and, therefore, no fifth amendment violation. In any case, relief accorded Sweatt under the fifth amendment is also available to him under the fourteenth amendment. The court grants summary judgment on the fifth amendment claim to not only Messick and Bailey in their individual capacities, but to all defendants in their individual and official capacities.

#### d. *Eighth Amendment*

■ The eighth amendment prohibition on cruel and unusual punishment applies only after conviction of a crime. *Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 1083–84, 89 L.Ed.2d 251 (1986); *Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408–09, 51 L.Ed.2d 711 (1977). Sweatt was not convicted of any crime. Therefore, as with the fifth amendment, summary judgment on the eighth amendment claim is appropriate for all defendants in their individual and official capacities.

### B. *Qualified Immunity for Chief Williamson*

■ Sweatt claims that Chief Williamson is individually liable as a supervisor for Messick's actions because of a failure to train and supervise adequately. The defendants are correct that respondeat superior cannot serve to hold supervisors liable for the acts of employees. *Greason v. Kemp,* 891 F.2d 829, 836 (11th Cir.1990). Nevertheless, a supervisor may be held liable "due to the existence of an improper policy or from the absence of a policy." *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991).

■ Supervisorial liability for inadequate training or supervision is available only upon meeting a number of requirements. *See, e.g., McKinney,* 997 F.2d at 1443 (discussing failure to train in fourth and fourteenth amendment context); *Greason,* 891 F.2d at 836–37 (discussing failure to train and supervise in eighth amendment context). The court need not sort out exactly what the requirements are to prove a failure to train or supervise claim under the first, fourth, and fourteenth amendments because, under any standard, Sweatt would have to (1) present evidence of the inadequate training or supervision and (2) show that the failure to train or supervise violated a constitutional right.[30] Sweatt's failure to train and failure to supervise claims are unable to meet one or the other of these requirements.

#### 1. *Failure to Train*

■ Sweatt claims that Messick was given inadequate training about how to deal with people under the influence of alcohol. Even assuming there was inadequate training about how to handle alcohol-related arrests, this would not violate Sweatt's constitutional rights to be free from excessive force and from punishment for protected speech. The link between how people under the influence of alcohol are treated and the constitutional rights at stake in Sweatt's suit is too attenuated to support this claim.[31] A police officer could be well-trained in dealing with alcohol-related arrests and still have violated Sweatt's rights. Conversely, any competent officer who was untrained in how to handle people under the influence of alcohol would still not have conducted himself like Messick.[32] Chief Williamson is entitled to quali-

---

**30.** The court does not imply that this is all Sweatt would have to show to prevail; rather, the court does not reach what more Sweatt would have to prove.

**31.** Sweatt's claim is distinguishable from *Hurst v. Finley,* 857 F.Supp. 1517, 1522–23 (M.D.Ala. 1994), where the district court ruled that failure to train about requiring the performance of field sobriety tests before charging a suspect with driving under the influence of alcohol could reflect deliberate indifference to the fourth amendment requirement of probable cause to arrest.

The link between the failure to train and the constitutional right in *Hurst* is much closer than in Sweatt's situation because a sobriety test is necessary to determine probable cause.

**32.** Sweatt does not appear to have brought a claim regarding failure to train on the use of excessive force, which could raise a constitutional issue. Even if he did bring such a claim, there is no evidence in the record to support a factual finding of inadequate training in the use of excessive force. Therefore, such a claim could not

fied immunity on the failure to train claim.[33]

### 2. *Failure to Supervise*

■ The court now addresses the question of failure to supervise adequately. The essence of this claim is that Chief Williamson knew about Messick's past temper and use of excessive force, but failed to take adequate steps to supervise or discipline Messick. The court finds that Sweatt has not presented enough evidence to allow the trier of fact to find that Williamson knew that Messick had a propensity toward violence. Officer Simmons testified at his deposition that he had seen Messick lose his temper on at least three occasions.[34] Simmons further testified that on one of those occasions, Messick got into a fight and struck someone with a flashlight.[35] Simmons reported this incident to supervisors.[36] However, Sweatt has presented no evidence that Simmons spoke with Williamson about that incident before the incident involving Sweatt; in fact, it appears that Simmons did not discuss the first incident with Williamson until after the Sweatt incident.[37] Sweatt has also presented no evidence that Williamson knew of Messick's termination from the Opp Police Department for bad temper and belligerent conduct. There is only a bare assertion by Dr. George Kirkham, an expert retained by Sweatt, that Williamson failed to take appropriate action with regard to supervision, discipline, and supplemental instruction.[38] Based on the lack of evidence, the trier of fact could not find inadequate supervision. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir.1993). Chief Williamson is entitled to

qualified immunity on the failure to supervise claim.[39]

### C. *Official–Capacity Immunity*

■ The court next turns to official-capacity immunity. The Supreme Court has held that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity [of which the official is an agent]." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). As the Eleventh Circuit has put it, official-capacity suits against municipal officers under § 1983 are, "in actuality, suits directly against the city that the officer represents." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991) (per curiam). Therefore, "the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991).

■ A local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). The court begins by examining whether the use of excessive force or punishment for protected speech were customs in the Andalusia Police Department. In order to rise to the level of a custom, a practice must be "longstanding and widespread." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). Sweatt's evidence does not rise to this standard.

---

survive summary judgment. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir.1993).

**33.** The court notes that it reads Sweatt's complaint to possibly assert an alternative claim that even if Messick was trained, he failed to follow the training. If such a claim has been asserted, it is an inadequate basis for finding supervisorial liability under *City of Canton v. Harris*, 489 U.S. 378, 390–91, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989) (fault must be in training program itself, not in particular officer). Although *Harris* concerns municipal liability rather than supervisorial liability, the Eleventh Circuit depended heavily on *Harris* in developing the supervisorial liability standard in *Greason*, 891 F.2d at 837.

**34.** Simmons Dep. at 40.

**35.** *Id.* at 59.

**36.** *Id.* at 44.

**37.** *Id.* at 44–45.

**38.** Kirkham Aff. at 3.

**39.** Williamson might still be liable under state law for failure to train and supervise.

The court now turns to the policy question. A policy is not "limited to decisions made by the city's official legislative body." *Id.* at 1480. Rather, "a municipal official who has 'final policymaking authority' in a certain area of the city's business may by his or her action subject the government to § 1983 liability when the challenged action falls within that authority." *Id.* State law governs whether an official has final policymaking authority. *Id.* The court must "examine not only the relevant positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir.1989). The court has found no assertions in the briefs and no evidence in the record as to where final policymaking authority lies. There is no evidence that Williamson or any other person had final policymaking authority. Accordingly, the policy claim cannot survive. Summary judgment is granted to all the defendants in their official capacities.

## V. STATE LAW CLAIMS

The defendants have not sufficiently clarified in their brief the nature of their challenge to the state law claims. Therefore, summary judgment is denied on the state law claims.

## VI. CONCLUSION

Accordingly, it is ORDERED as follows:

(1) That the defendants' motion for summary judgment, filed on September 26, 1994, is denied as to the following claims of plaintiff Charles Sweatt:

(a) The first amendment claim, as enforced by 42 U.S.C.A. § 1983, against defendant Robby Messick in his individual capacity;

(b) The fourth and fourteenth amendment claims, as enforced by 42 U.S.C.A. § 1983, against defendant Messick and defendant Chuck Bailey in their individual capacities; and

(c) The state law claims against defendant Messick, defendant Bailey, and defendant Jerry Williamson; and

(2) That the defendants' motion for summary judgment is granted as to all of plaintiff Sweatt's other claims.